Alexander Chananau, J.
The application by defendants Sylvester Jones and Rose Marie Hawkins to withdraw their guilty pleas heretofore entered raises novel issues of first impression.
*932 The defendants were indicted on February 11, 1975, and charged with committing the crime of robbery in the first degree, a class B felony, and other related crimes (while acting in concert). The complainant was one Juan Rodriguez.
Prior to April 26, 1976, the case had been on the calendar on 23 different dates and before me, in the trial part, on 8 different times. The case had been marked "ready” for trial or hearing for April 26, 1976. Plea negotiations had been had previously, but had not been conclusive because while all defendants were eager to plead, the defendant Sylvester Jones (a predicate felon) would not accept a sentence greater than two to four years, and the District Attorney would not agree to less than four to eight years.
The defendant Frank Hawkins had made a full confession to the police, implicating all three defendants and had led the police to where the complainant’s car was after the robbery; he had also offered, through his attorney, to testify against the other defendants.
The minutes of April 26 show that defendants Sylvester Jones and Rose Marie Hawkins were not present when the case was first called and it was marked "second call.” Defendant Frank Hawkins was present as were the attorneys for all three defendants. The court was advised that Assistant District Attorney Barry Weinstein, who was to try the case, was engaged in trial in another part and one of the assistants in this part answered the calendar. The defendants are represented by individual, active practitioners and it had been almost impossible to get all three of them and Mr. Weinstein ready previously. The court therefore initially directed that the case be sent to the part where Mr. Weinstein was on trial, at which time the following took place:
"mr. florscheim (attorney for Rose Marie Hawkins): Judge, we have discussed it and there are further discussions indicated, I think we might be able to resolve it.
"the court: Why don’t we dispose of it today if it can be disposed of?
"mr. florscheim: We need Mr. Weinstein. He’s got the case and the facts.”
The court thereupon sent for Mr. Weinstein.
The court recalls that informal discussions were had before the Bench while awaiting Mr. Weinstein’s arrival, during which the court was informed that the offer to defendant *933 Jones was three to six years and that Jones still wanted two to four years; at that point the court suggested two and one half to five years. When Mr. Weinstein appeared he was informed of the discussions before the Bench. The record indicates that the following then took place:
"mr. weinstein: Good morning, your Honor.
"the court: Good morning. I understand that there is a disposition here.
"mr. weinstein: Yes.
"the court: Let’s hear about it.
"mr. weinstein: Can we approach?
"the court: Yes.”
Whereupon the defendants’ attorneys and Mr. Weinstein finalized the terms of the pleas and the attorneys went back to the defendants and conferred with them and the plea proceedings were had.
The three defendants thereupon pleaded guilty, as agreed, to reduced charges. Jones pled guilty to robbery in the third degree with the agreed upon sentence, as aforesaid, and Frank Hawkins and Rose Marie Hawkins pled to attempted robbery in the third degree (class E felony) with no agreement or promise as to sentence; the said pleas were in full satisfaction to all the counts of the indictment.
At the time the pleas were taken, each defendant was questioned extensively by the court and each defendant set forth on the record his participation in the crime and, in his own words, exactly what he or she had done; each defendant also stated in his own words, that the other codefendants had participated in the crime.
Following the respective pleas, the defendants were ordered to appear for sentence on June 7, 1976. At that time, a full probation report on each defendant was received by the court; all defendants admitted to the probation officer their respective participation in the robbery.
Defendant Frank Hawkins appeared for sentence on June 7. Based upon his probation report, the sentence was adjourned six months to December 6, 1976, and he was placed on interim supervision.
Defendants Sylvester Jones and Rose Marie Hawkins failed to appear for sentence when the calendar was called on June 6, but they did appear with their attorneys on June 8, at which time each attorney was given his respective defendant’s *934 probation report. All three reports state that the department’s letter to the complainant was returned by the post office with the notation ’’deceased”. The attorneys for defendants Sylvester Jones and Rose Marie Hawkins confronted the Assistant District Attorney with this information and learned from him that he had received a telephone call on Thursday, April 22, 1976, from one Angel Vega, who told him that the complainant witness had died. The defendants Sylvester Jones and Rose Marie Hawkins (hereinafter referred to as the defendants), thereupon made oral application to the court to withdraw their respective guilty pleas claiming, solely, that the same had been obtained "via egregious, prosecutorial misconduct in violation of their right to due process under the Fourteenth Amendment,” as a result of the prosecutor’s failure to disclose to the defendants and the court, prior to the guilty pleas, that the complaining witness had died. Defendant Frank Hawkins does not join in this application. The District Attorney denied any fraud and urges that he had no obligation to reveal to the defendants and to the court that he had been told that the complainant, Rodriguez, was dead.
In People v Tinsley (35 NY2d 926, 927), it was held that the nature and extent of the fact-finding procedures prerequisite to the disposition of an application to withdraw a plea of guilty previously entered rest largely in the discretion of the Judge to whom the application is made. "Only in the rare instance will a defendant be entitled to an evidentiary hearing; often a limited interrogation by the court will suffice. The defendant should be afforded reasonable opportunity to present his contentions and the court should be enabled to make an informed determination in accordance with the principles laid down in People v. Nixon (21 N Y 2d 338) and associated cases.”
A hearing was thereafter held before me on June 17, 1976, at which time the defendants, through their attorneys, set forth on the record the facts and their arguments to withdraw their previously entered guilty pleas. Briefs and reply briefs have also been filed by these defendants and by the District Attorney.
The facts, as found by the court, are not in dispute and have previously been recited, and will be further set forth hereinafter to the extent necessary to dispose of this application.
The defendants do not assert their innocence and no claim is made of any deficiency in the inquiries by the court at the *935 time their respective pleas were entered nor that the agreed upon sentences will not be imposed. Both sides agree as to what happened and both sides quote from the same basic decisions which require that a guilty plea must be voluntarily and knowingly made (McCarthy v United States, 394 US 459); and that there must be an "effective waiver” by a defendant of his rights (Boykin v Alabama, 395 US 238).
It is clear that fraud on the part of the prosecutor mandates the withdrawal of the guilty plea (Kercheval v United States, 274 US 220); as does "duress” practiced on the defendant (People v Flowers, 30 NY2d 315); failure of the prosecutor to abide by the terms of the negotiated plea bargain (Santobello v New York, 404 US 257); or where, at the time the plea was entered, no one involved was aware that the defendant would be subject to mandatory life sentence as a fourth felony offender (People v Nettles, 30 NY2d 841). "A plea of guilty differs in purpose and effect from a mere admission or an extra-judicial confession; it is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence. Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.” (Kercheval v United States, supra, p 223.) (See, also, American Bar Association Minimum Standards for Criminal Justice, Standards Relating to Withdrawal of the Plea, § 2.1.)
The defendants contend that the prosecutor’s silence at the time the pleas were entered, to wit, his failure to disclose that the complainant was dead, was deliberate and knowing and for the sole purpose of obtaining a conviction through the deception of the court and their counsel and that he was under an affirmative duty to disclose this information, which they term "material evidence”, citing CPL 240.40 "Discovery; continuing duty to disclose” canon 7 of the Code of Professional Responsibility; rule DR 7-103 of the Disciplinary Rules and Brady v Maryland (373 US 83).
Whatever else it may be, the court holds the information that the complainant was dead, was not "discoverable property” under CPL 240.40.
As already stated, the defendants do not deny their guilt. While guilt or innocence is irrelevant to granting relief if a defendant’s guilty plea is shown to have been coerced, it is not *936 irrelevant on the issue of whether his plea was, in fact, coerced (Barber v Gladden, 220 F Supp 308, 313; Shupe v Sigler, 230 F Supp 601, 605). People v Malinowski (37 AD2d 662, 663) states the general rule that: "Generally, a plea of guilty may not be withdrawn unless there is some claim of innocence or fraud, coercion or mistake in inducing the plea.” (People v Lascaris, 28 AD2d 586; People v Wright, 20 AD2d 857.)
The defendants argue that without the testimony of complainant the case against them "collapsed” and that they could not be successfully prosecuted; that there was no prior, corporeal identification of Jones; that there was an unlawful search of Jones and resultant illegal seizure of complainant’s wallet and papers from him; that Jones’ statements should be suppressed as "fruits of the poisonous tree”; and finally that they would not have pleaded guilty had they known that the complainant was dead.
The court finds these arguments without merit. Specifically, with respect to Jones there was a hearing in the Criminal Court at which Jones waived his appearance and the case was then held for the Grand Jury. The property was found on Jones and he made statements to the police.
In the determination of this motion, it is significant that the defendants pleaded guilty. A plea of guilty is the equivalent to a conviction after trial (People v Quinn, 8 Misc 2d 546, affd 5 AD2d 824; Boykin v Alabama, 395 US 238, supra).
"[A] plea of guilty [is] an admission of the allegations contained in the indictment. It established] guilt of the crime charged as incontrovertibly as the verdict of [a] jury”. (People ex rel. Carr v Martin, 286 NY 27, 32.) (See, also, Kercheval v United States, 274 US 220, supra; Machibroda v United States, 368 US 487.) A guilty plea also operates as a waiver of certain substantial rights, i.e., the privilege against self incrimination, the right to confront witnesses, and the right to trial by jury (Matter of D. [Daniel], 27 NY2d 90, app dsmd cert den sub nom. D. v Onondaga County, 403 US 926; People v Lynn, 28 NY2d 196; Brady v United States, 397 US 742; McMann v Richardson, 397 US 759; see, also, People v La Ruffa, 40 AD2d 1022, affd 34 NY2d 242, rearg den 34 NY2d 916, vacated 419 US 959, rearg granted 35 NY2d 993, affd 37 NY2d 58).
Moreover, where a defendant waives pretrial motions, he relinquishes the right to thereafter challenge an alleged ille *937 gal detention or the voluntariness of a confession (People v Piracci, 24 AD2d 892, cert den 385 US 904; People v Cathcart, 36 AD2d 981; People v McDonald, 20 AD2d 907; People v Dash, 16 NY2d 493; People v Leonard, 34 AD2d 865; People v Rogers, 15 NY2d 690; CPL 710.70, subd 3). Nor can he thereafter challenge the legality of the seizure of tangible physical evidence (People v Smith, 41 AD2d 893; CPL 710.70, subd 3; Ann., 20 ALR3d 724, Plea of Guilty as Waiver of Claim of Unlawful Search and Seizure). Here the plea operated as a waiver of all defenses except jurisdictional defects (People v La Ruffa, supra; People ex rel. Cherry v Deegan, 32 AD2d 792; People v Schiskey, 39 AD2d 608; see, also, Ringel, Searches and Seizures, Arrests and Confessions, §§ 101.01, 112, 112.01; People v La Barth, 19 NY2d 649).
It should also be remembered that the codefendant, Frank Hawkins, who has not joined in this application, made a full confession to the police, implicating defendants, Sylvester Jones and Rose Marie Hawkins, and offered, through his attorney, to testify against them. Accordingly, it may be questionable whether the case against the moving defendants had "collapsed” with the death of Rodriguez.
In any event, this line of argument by the moving defendants begs the real issue and is of no import if, in fact, their guilty pleas were voluntarily and knowingly made.
The basic issue to be determined herein is whether the prosecutor was under any obligation to inform the defendants during the plea negotiations and proceedings on April 26, when they pleaded guilty to reduced charges, that he had received a telephone message four days earlier that the complaining witness was dead. Both sides cite Brady v Maryland (373 US 83, 87) wherein the Supreme Court stated: "We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution”. (Emphasis supplied.)
In addition, the defendants cite canon 7 of the Code of Professional Responsibility and rule DR 7-103 of the Disciplinary Rules promulgated by the American Bar Association, both of which would have the prosecutor make timely disclosure to the defense of evidence that "tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment”.
*938 Ergo, the questions presented are (1) whether the information withheld by the prosecutor was "evidence” and (2) if it was evidence, then was it evidence "material either to guilt or to punishment”?
Brady, however, initially raised two problems, without apparent answer.
First, read literally, the Brady holding applied only to evidence that the defense had requested the prosecutor to disclose and, indeed, in the subsequent case of Moore v Illinois (408 US 786, 794), the Supreme Court emphasized that "the heart of the holding in Brady is the prosecution’s suppression of evidence, in the face of a defense production request”.
Second, the decision in Brady did not define the point in the proceedings against a defendant at which the prosecutor must disclose favorable evidence, and, as might have been expected, the lower courts have generally divided between two alternatives: those favoring pretrial disclosure (see United States v Bonanno, 430 F2d 1060, cert den 400 US 964), and those holding Brady limited to cases of suppression at trial (see United States v Moore, 439 F2d 1107; United States v Conder, 423 F2d 904, cert den sub nom. Pegram v United States, 400 US 958).
Recognizing that in some cases, pretrial disclosure may present problems, i.e., where disclosure might present dangers to prospective witnesses or enable a defendant to prepare perjured witnesses or testimony, it seems preferable and equitable that the prosecutor disclose in advance of trial, any exculpatory evidence in his possession, absent any unusual circumstances or conditions.
That appears to have been the approach taken by the Supreme Court in United States v Agurs, 427 US 97.
Agurs involved the innocent suppression by the Government in a murder case in the District of Columbia of an unrequested criminal record of the decedent which indicated that he had pleaded guilty to assault and twice to charges of carrying a deadly weapon. The defense tendered was self-defense, and it was contended that the prior criminal record, concededly admissible, would have tended to show the decedent’s aggressive character and would have been corroborative of the claim of self-defense. The Court of Appeals reversed the District Court’s denial of a motion for a new trial. The Supreme Court reversed, stating (p 102) that the Court of *939 Appeals had "incorrectly interpreted the constitutional requirement of due process”.
The Supreme Court in Agurs took the position that so long as the information in his possession was "exculpatory”, the prosecutor was under a duty to disclose such information to the defendant even without any specific request therefor by the defendant.
The court held, however, that the question as to the extent of the duty to disclose was determinable by reference to the standards of due process and turned on whether the failure to disclose was "of sufficient significance to result in the denial of the defendant’s right to a fair trial” (p 108). The court emphasized that the prosecutor was not obligated "to allow complete discovery of his files as a matter of routine practice” or to disclose merely because the particular information "might affect the jury’s verdict”. Any such approach, the court noted, smacked of the "sporting theory of justice” which the court had previously rejected in Brady.
The Supreme Court further stated (p 109): "Whether or not procedural rules authorizing such broad discovery might be desirable, the Constitution surely does not demand that much. While expressing the opinion that representatives of the State may not 'suppress substantial material evidence’, former Chief Justice Traynor of the California Supreme Court has pointed out that 'they are under no duty to report sua sponte to the defendant all that they learn about the case and about their witnesses’. In re Imbler, 35 Cal. Rptr. 293, 387 P. 2d 6, 14 (1963). And this Court recently noted that there is 'no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on the case’. Moore v. Illinois, 408 U. S. 786, 795. The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality’ in the constitutional sense.
* * *
"On the other hand, since we have rejected the suggestion that the prosecutor has a constitutional duty routinely to deliver his entire file to defense counsel, we cannot consistently treat every nondisclosure as though it were error. It necessarily follows that the judge should not order a new trial every time he is unable to characterize a non-disclosure as harmless under the customary harmless error standard. Un *940 der that standard when error is present in the record, the reviewing judge must set aside the verdict and judgment unless his 'conviction is sure that the error did not influence the jury, or had but only slight effect.’ Kotteakos vs. United States, 328 U. S. 750, 764. Unless every nondisclosure is regarded as automatic error, the constitutional standard of materiality must impose a higher burden on the defendant.
"The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt”.
Unlike the situation in the case at bar, Brady, Agurs and nearly all reported cases were presented as applications for posttrial review of the prosecutor’s conduct upon an allegation that certain exculpatory evidence had been suppressed. In such cases the reviewing court has the "luxury” of a trial transcript and it is able to apply the rules and standards mandated by the Supreme Court. In the case at bar, the defendants pleaded guilty prior to trial and there is no record to examine. But we can examine and determine the nature of the "information” which the prosecution failed to disclose, to wit, that his complaining witness was dead.
The defendants argue that this undisclosed information was exculpatory evidence and, therefore, the prosecutor had an obligation to disclose such exculpatory evidence to them. Examining the undisclosed information, was it exculpatory evidence or evidence material either to the guilt or punishment of the defendants? Is it in fact evidence — information having any material or relevant probative value? "Prosecutors are under a positive duty, independent of court order, to disclose exculpatory evidence to a defendant. To justify a reversal of a conviction for failure to disclose evidence the evidence withheld by the prosecution must be clearly and unquestionably exculpatory and withholding of the evidence *941 must be clearly prejudicial to the defendant.” (State v Kelly, 216 Kan 31, 33.) In Commonwealth v Gee (354 A2d 875, 878) the Supreme Court of Pennsylvania, commenting on the nature and scope of "exculpatory” evidence stated: "Much of this appeal is based on statements made by various eyewitnesses to the incident which appellant contends he was improperly precluded from making adequate use of at his trial and which he describes broadly as 'exculpatory.’ He cites Brady v. Maryland, 373 U. S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963) for the proposition that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution’. The proposition is undoubtedly correct, though we note that the record reveals no specific request for such evidence other than for materials relating to his polygraph examination. Nevertheless, we think that, even absent such a specific request, a prosecutor has the duty to make available to the defense evidence that is truly exculpatory, rather than merely favorable. Brady suggests that such evidence would be 'material either to guilt or to punishment.’ Exculpatory evidence has also been defined as 'evidence which extrinsically tends to establish defendant’s innocence of the crimes charged, as differentiated from that which, although favorable is merely collateral or impeaching.’ People v. Bottom, 76 Misc. 2d 525, 351 N. Y. S. 2d 328, 334-35 (1974). Cf. People v. Fraiser, 75 Misc. 2d 756, 348 N. Y. S. 2d 529 (1973). A piece of evidence in the possession of the prosecutor, therefore, cannot be considered exculpatory merely because the defendant chooses to call it so. ” (Emphasis supplied.)
Agurs (supra, pp 109-110) tells us that:
"The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality’ in the constitutional sense.
* * *
"Conversely, if evidence has no probative significance at all, no purpose would be served by requiring a new trial”.
In Shrader v Riddle (405 F Supp 752, 756) the United States District Court, Western District of Virginia, stated: "All that the Constitution requires is that the prosecution upon defense request not suppress evidence that would be favorable to the accused. Such evidence is defined as that which would be *942 material either to the guilt or punishment of the defendant. Brady v. Maryland, 373 U. S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).”
Clearly the undisclosed information in the case at bar is not exculpatory evidence — evidence material either to the guilt or the punishment of the defendants. Unquestionably, such information might have assisted the defendants to prepare for trial and, if known to them, might even have influenced them not to plead guilty. It may be that the death of complainant weakened the prosecutor’s case and made it more difficult for him to prove the defendants’ guilt if they had chosen to go to trial. However, no case has been brought to this court’s attention nor has our research found any which suggests that defendants may withdraw a plea of guilty because they were unaware of a weakness in the prosecutor’s case, which he had not voluntarily revealed to them.
Brady rejected the "sporting theory of justice” (373 US 83, 90, supra), which the defendants seemingly urge. Agurs reiterated such rejection and held that a prosecutor need not reveal everything that might influence a jury (p 108). (See, also, Matter of Imbler, 60 Cal 2d 554; Moore v Illinois, 408 US 786, 795, supra; Shrader v Riddle, supra; State v Johnson, 324 So 2d 349, 350 [La], holding: "As we stated in State v Williams, 310 So 2d 528 (La. 1975), the state is not required to open its files to the accused and allow him to search them and decide what is exculpatory. Accordingly, there is no merit in this assignment of error.”
People v Rosenberg (59 Misc 2d 1, affd 34 AD2d 961) held, inter alia, that the prosecution is not required to disclose every shred of evidence in its possession which an accused construes as favorable.
People v Stridiron (33 NY2d 287, 292) tells us: "But there is no duty on the part of the prosecutor to call at trial every witness to a crime or to make a complete and detailed accounting to the defense of all law enforcement investigatory work.”
Without doubt, the defendants would have been helped and the prosecutor’s case made more difficult if the latter had disclosed that the complainant was dead, but that is not the constitutional standard, and the argument must fall.
"It has been argued that the standard should focus on the impact of the undisclosed evidence on the defendant’s ability to prepare for trial, rather than the materiality of the evi *943 dence to the issue of guilt or innocence. See The Prosecutor’s Constitutional Duty To Reveal Evidence To The Defense, 74 Yale L. J. 136 (1964). Such a standard would be unacceptable for determining the materiality of what has been generally recognized as 'Brady material’ for two reasons. First, that standard would necessarily encompass incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor’s entire case would always be useful in planning the defense. Second, such an approach would primarily involve an analysis of the adequacy of the notice given to the defendant by the State, and it has always been the Court’s view that the notice component of due process refers to the charge rather than the evidentiary support for the charge” (United States v Agurs, supra, p 112, n 20).
Compare United States v Needles (472 F2d 652, 654): "[The guilty] plea, after all, is the formal admission by a defendant in open court — and here with the advice of competent counsel —that he committed the crime. See McCarthy v. United States, 394 U. S. 459, 466 * * *. Of what relevance to that admission, then, is the discovery some months later that the sentencing judge has been furnished allegedly inaccurate derogatory information? Surely, this has nothing to do with a defendant’s innocence or guilt of the crime to which he has already pleaded. Nor would it affect the question whether he understood the charge against him when he admitted his guilt. See generally McCarthy v United States, supra. ”
Some of the reasons which the Court of Appeals in People v Nixon (21 NY2d 338) found "significant” suggest that defendants’ application be denied. Each of the defendants is knowledgeable and criminally experienced, both recidivists and Jones a predicate felon; each was represented by an able, experienced and conscientious attorney who worked long and arduously to negotiate the bargained plea to a lesser crime with sharply reduced penalty; each defendant was fully advised of his rights and the consequences of the plea; each waived his rights and stated, in his own words, his own involvement in the crime of robbery and the participation of the other defendants. The probation report for each defendant confirmed his guilt.
Further, the defendants were aware that their codefendant, Frank Hawkins, had made a full confession to the police, which implicated them, and that he had led police to where the complainant’s stolen automobile was being kept by them. *944 As stated by the court in Nixon (supra, p 350): "the record establishes [each defendant’s] lawyer’s active and informed role in the proceedings. This was no casual or hurried representation of a defendant suggesting that there had not been adequate consultation between lawyer and client. * * * Moreover, defendants] [were] charged with the most serious crime of murder in the first degree, making the lesser plea quite understandable. Lastly, [each] was a recidivist, already experienced in the ways of a criminal proceeding.” (See, also, People v Garrett, 43 AD2d 503, affd 36 NY2d 727; People v Cook, 42 AD2d 20; People v Wright, 20 AD2d 857; People v Sutton, 39 AD2d 820.)
Compare People v Francis (38 NY2d 150) where the defendant, a postal employee, was arrested for carrying a gun and ammunition while working at his job in the post office at Kennedy Airport. The law under which the defendant was charged made possession of a gun and ammunition a class "D” felony, unless such possession occurred in defendant’s "home or place of business”, in which case, the offense was a misdemeanor. The defendant pleaded guilty to the reduced charge of attempted possession, a class "E” felony. The defendant urged, for the first time on appeal, that the Judge had an absolute duty to warn him that he might qualify for a misdemeanor before accepting his felony plea. In affirming the defendant’s conviction, the Court of Appeals (Fuchsberg, J.), stating (p 152) that the term "place of business” had not been definitely interpreted at the time defendant pleaded, emphasized that it was not deciding the question of whether the place of business exception applied to one in defendant’s position (by a three to two vote, the Appellate Division, in its affirmance had held that it did not) (pp 152-153): "We focus, rather, on defendant’s allegation that the Judge who accepted his plea was under a duty to inquire as to whether defendant knew that the law might be capable of an interpretation more favorable to him than his plea was, for, if defendant is incorrect in that assertion, then his plea was voluntary and fair, and we may not review it. (See McMann v Richardson, 397 US 759, 766; Brady v United States, 397 US 742, 748; Boykin v Alabama, 395 US 238, 242-243; Toilet v Henderson, 411 US 258, 267; People v Lynn, 28 NY2d 196, 201-202; People v Nicholson, 11 NY2d 1067, cert den 371 US 929; People v Schiskey, 39 AD2d 608.)”
However, after illustrating the circumstances which might *945 alert a Judge to the fact that a plea is inappropriate (i.e., "Evidence of a dispute on the facts”, People v Serrano, 15 NY2d 304; "Evidence on an incorrect charge on the face of the indictment”, People v Englese, 7 NY2d 83; "Evidence of inadequate representation by counsel”, People v Nixon, 21 NY2d 338), the court held that the claimed potential ambiguity in the law, under the circumstances presented, was not sufficient to trigger such an inquiry and that the acceptance of Francis’ plea was proper, stating (pp 155-156):
"A plea is a bargain struck by a defendant and a prosecutor who may both be in doubt about the outcome of a trial. (People v Nixon, 21 NY2d 338, supra; People v Foster, 19 NY2d 150, supra; People v Serrano, 15 NY2d 304, supra.) Only the events of time, place, and, if applicable, victim, need be the same for the crime pleaded as for the one charged (People v Griffin, 7 NY2d 511, 515, supra). In arriving at his bargaining position, a defendant may well calculate not only uncertainties in how a court may view the facts in his case but how it may view the applicability of law as well. On such matters, Judges themselves may often be expected to differ with one another, a factor to which the parties to plea bargaining need not be taken to be oblivious. Where the court which accepts the plea has no reason to believe that the plea is unfair or inappropriate, the bargain becomes final. Unless there was unfairness in its negotiation or acceptance, the fact that a loophole might have been available to defendant is not sufficient grounds upon which to set aside the bargain made. The defendant here has not been shown to have been victimized by inherent unfairness, nor is it evident that the court should have perceived any. (Emphasis supplied.)
"Accordingly, and on the grounds that we have stated, the order of the Appellate Division should be affirmed.”
In People v Etheridge (29 AD2d 679) the defendant pleaded guilty to one assault count in a multicount indictment, admitting that he had cut his wife with a knife. When defendant appeared for sentence nearly three months later, he sought to withdraw his plea on the grounds that "(1) his wife had testified against him (apparently before the Grand Jury) under duress, (2) his wife would not have testified against him on a trial, (3) he had made admissions to the police without being given the warnings outlined in Miranda (supra) and (4) therefore, the People could not prove a case against him”. In affirming Etheridge’s conviction, the Appellate Division (one *946 Judge dissenting), held that the trial court properly exercised its discretion in dénying permission to withdraw the plea, stating (p 680): "There is no claim of innocence, even on this appeal. Defendant’s only claim is that the People may not now be able to prove him guilty because the complainant (his wife) would not presently testify against him. This court has held that that is not a sufficient reason to permit the withdrawal of a guilty plea (People v. Grant, 28 A D 2d 1090).”
Similarly, in the case at bar, there is no claim of innocence. Defendants herein claim that the People may not now be able to prove them guilty because the complainant, being dead, would not presently testify against them. In other words, the defendants herein, while not denying their guilt, have reassessed the possibilities of conviction, having learned, after pleading guilty, that the complainant was dead. As stated by the Supreme Court in Brady v United States (397 US 742, 756-757):
"Often the decision to plead guilty is heavily influenced by the defendant’s appraisal of the prosecution’s case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State’s case * * * We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought”. (Emphasis supplied.)
This court finds, therefore, that the defendants’ pleas herein were made freely and voluntarily and with a full understanding of the consequences thereof, and were not in any way induced by threats, duress, coercion or fraud on the part of the prosecutor.
Accordingly, the applications by defendants, Sylvester Jones *947 and Rose Marie Hawkins, to withdraw the previously entered pleas of guilty herein are denied.