OPINION OF THE COURT
Jones, J.
We hold that defendant was not denied due process when the District Attorney’s office did not disclose during plea negotiations that it had received information that the complaining witness had died.
On January 5, 1975 as he was entering his car, Juan Rodriguez was approached at gunpoint by three persons including defendant who forced their way into the vehicle, drove him a distance and stole his wallet before releasing him and driving off. Following his arrest defendant was indicted for robbery in the first degree, robbery in the second degree, grand larceny in the third degree and criminal possession of a weapon in the fourth degree and entered pleas of not guilty. The case appeared on the calendar a number of times during 1975 and was adjourned on each occasion for various reasons, among them the inability of the People to locate the complaining witness, Rodriguez. On January 15, 1976 investigators for the defense located the witness, and shortly thereafter defense *79 counsel was informed that the District Attorney’s office had also found and conferred with him. On February 3, 1976 the prosecution announced the case ready for trial.
Plea negotiations had been conducted before the complaining witness had been located, were continued after the case had been marked ready, and culminated on April 26, 1976 when defendant withdrew his prior plea of not guilty and pleaded guilty to robbery in the third degree in full satisfaction of the indictment. After defendant admitted his guilt and established a factual basis for the plea, the plea was accepted and sentencing was put over until June 7.
When defendant appeared for sentencing, defense counsel moved to withdraw the plea of guilty on the ground that it had come to his attention the previous day that the District Attorney’s office had been informed of the death of Rodriguez, the victim, on April 22, 1976, four days prior to the acceptance of the plea.
In support of the motion to withdraw the plea, counsel for defendant contended that "in the spirit of Brady versus Maryland [373 US 83]” the prosecution was obliged to disclose the fact of Rodriguez’ death to the defense and averred that had counsel "known that the witness in chief passed away, had I been informed of that fact I would not have allowed, at least I would have advised my client not to make the plea”. A hearing was had on defendant’s application on June 17, 1976, at the conclusion of which, following submissions of counsel, the application was denied (87 Misc 2d 931). The Appellate Division affirmed defendant’s judgment of conviction on the plea, and we now affirm the dispositions of both courts below. At no time did defendant assert, nor does he now, that he was innocent of having committed the criminal acts charged.
It advances analysis to focus on the precise nature of the matter which was not disclosed by the prosecutor during the plea negotiations — information with respect to the death of the complaining witness. The circumstance that the testimony of the complaining witness was no longer available to the prosecution was not evidence at all. Further, to the extent that proof of the fact of the death of this witness might have been admissible on trial, it would not have constituted exculpatory evidence — i.e., evidence favorable to an accused where the evidence is material either to guilt or to punishment. Accordingly, it does not fall within the doctrine enunciated by the Supreme Court of the United States in Brady v Maryland *80 (373 US 83, 87; and cf. United States v Agurs, 427 US 97, 112). Counsel does not now claim otherwise. Rather, as counsel tacitly admitted in his colloquy with the court on the motion to withdraw the plea, the death of Rodriguez would merely have been one of the factors — though a most significant factor —to be weighed by defendant in reaching his decision whether, as a matter of tactics in light of the strength of the People’s case against him, to interpose a negotiated plea of guilty.
The question remains as to the extent of the prosecution’s obligation to disclose information in its possession which, as here, is highly material to the practical, tactical considerations which attend a determination to plead guilty, but not to the legal issue of guilt itself. Analytically the issue is not whether this defendant was entitled to evidence in the possession of the prosecution; the question before us on this appeal is whether the pretrial conduct of the prosecutor in the course of plea negotiation was such as to constitute a denial of , due process to defendant in the circumstances disclosed in this record.
The Supreme Court has observed that the prosecutor "is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor — indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.” (Berger v United States, 295 US 78, 88.) Defendant notes that, as the basis for announcing the case ready, the prosecutor had represented to the court and to defense counsel that the complaining witness had been located and would therefore be available to testify at trial. Defendant adds that the prosecutor knew, or at least was chargeable with knowledge, that the plea for which defendant had negotiated was predicated principally on the availability of the Rodriguez testimony. Defendant then argues that it was reprehensible on the part of the prosecutor not to dislcose that he *81 had been informed of Rodriguez’ death, before the acceptance of defendant’s guilty plea. He asserts that nondisclosure in these circumstances constituted a denial of due process and that the sanction therefor must be to permit a withdrawal of the plea. We reject this contention.
Counsel cite no reported case, nor has our independent research disclosed any, in which judicial attention has been focused on the failure of a prosecutor before trial or during plea negotiations to disclose nonevidentiary information pertinent to the tactical aspects of a defendant’s determination not to proceed to trial. No particularized rule can or need be laid down; some comments may usefully be assayed, however. At the threshold we assume that, notwithstanding that the responsibilities of a prosecutor for fairness and open-dealing are of a higher magnitude than those of a private litigant, no prosecutor is obliged to share his appraisal of the weaknesses of his own case (as opposed to specific exculpatory evidence) with defense counsel. "A defendant is not entitled to withdraw his plea merely because he discovers * * * that his calculus misapprehended the quality of the State’s case”. (Brady v United States, 397 US 742, 757.) At the other extreme it is equally clear that the courts will allow a defendant to withdraw a guilty plea when the prosecution has either coerced him by threats or persuaded him by affirmative deceit to enter a guilty plea (e.g., People v O’Neill, 7 NY2d 867). All the reported instances of deceitful persuasion appear to have involved positive misstatement or misrepresentations; none has considered the effect to be accorded silence only. Consistent with legal principles recognized elsewhere in our jurisprudence, it would seem that silence should give rise to legal consequences only if it may be concluded that the one who was silent was under an affirmative duty to speak (cf., e.g., 24 NY Jur, Fraud and Deceit, § 107, pp 160-161). Whether and to what extent the courts, in the absence of statute or possible rule of court would impose such an affirmative duty on a prosecutor would necessarily be dependent on the circumstances of the individual case. Thus, we do not decide what the rule might be where in the course of plea negotiation a particular defendant staunchly and plausibly maintains his innocence but states explicitly apd^creditably that as a matter of balanced judgment in the lightbfi the apparent strength of the People’s proof he wishes to interpose a negotiated plea to reduced charges to avoid the risk of a more severe sentence *82 likely to attend conviction after trial; failure of the prosecutor to reveal the death of a critical complaining witness might then call for a vacatur of the plea. Silence in such circumstances might arguably be held to be so subversive of the criminal justice process as to offend due process.
It may be of more than passing interest that the formal statements of the professional responsibilities of prosecutors to make disclosure appear to address only the obligation to disclose exculpatory evidence (Code of Professional Responsibility, DR7-103, subd [B]; cf. former canon 5 of the Canons of Professional Ethics).* None touches on disclosure of tactical data. The applicable provision of the Standards Relating to the Prosecution Function and the Defense Function promulgated by the American Bar Association Project on Standards for Criminal Justice, is found in subdivision (c) of section 4.1: "It is unprofessional conduct for a prosecutor knowingly to make false statements or representations in the course of plea discussions with defense counsel or the accused.” Here, too, the formulation of standards appears to consider only affirmative misrepresentation and possibly, by reasonable extension, misleading silence when there is an affirmative duty of disclosure. The provision does not, however, assist in determining when there may be such an affirmative duty to disclose.
A fundamental concern of the criminal justice system, of course, is that an innocent defendant shall not be convicted; not that a possibly guilty actor shall escape conviction because the People are not able to establish his guilt.
Turning then to the present case, we hold that there was no obligation on the part of the prosecutor to reveal to defense counsel that Rodriguez had died, prior to acceptance of defendant’s plea of guilty. Defendant does not protest his innocence; on the contrary he testified to the factual basis for the charge to which he pleaded. While the prosecutor failed to inform defense counsel of Rodriguez’ death, there is no claim of affirmative misrepresentation. And, it is critical, the failure to disclose did not involve exculpatory evidence. We perceive no reason to depart from the principle that a fairly and voluntar *83 ily negotiated plea is the equivalent of a conviction after trial (Boykin v Alabama, 395 US 238).
Accordingly, for the reasons stated, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
Order affirmed.

 Reference to such standards should not be taken to imply that sanction for violation of professional responsibilities on the part of a prosecutor would necessarily inure to the benefit of a defendant. The appropriate remedy might be limited to disciplinary proceedings. In any event, we now express no view on this aspect of the matter.