OPINION OF THE COURT
Stanley Gartenstein, J.
The within prosecution for attempted robbery in the first degree was dismissed upon motion of the presentation agency when it was unable to proceed to trial owing to the fact that complainant, a tourist, permanently left the United States for Sweden.
The presentation agency now moves for an order pursuant to subdivision 1 of section 375.1 of the Family Court Act, to prevent sealing. The statutory basis for such relief requires a finding that sealing would not be in the interests of justice, and tracks a similar statutory scheme applicable to adult criminal courts by virtue of CPL 160.50. This motion also tracks a significant number of similar applications now before different parts of the court brought on in a substantial number of cases dismissed on grounds other than outright acquittal. Two arguments by the presentation agency support it:
(a) that a dismissal (or withdrawal) for unavailability of a complainant, in effect a dismissal for failure to prosecute, does not constitute a favorable termination within the enabling statute;
(b) that the respondent at some future time, may, for some ill-defined reason, plead guilty to the charge even *347 though the presentation agency cannot go forward owing to absence of a complainant.
Concerning the first ground, the movant relies upon the opinion of our distinguished Criminal Court colleague, the Honorable Max H. Galfunt, in People v Bell (95 Misc 2d 360) which held that a dismissal for failure to prosecute is not a favorable termination under CPL 160.50 inasmuch as it falls under the plenary powers of the court to control its own calendar (citing Riglander v Star Co., 98 App Div 101, affd 181 NY 531) rather than being rooted in the “interests of justice”, the catch-phrase used in both statutory schemes. Judge Galfunt points out that the phrase “interests of justice” has been defined in terms of specific criteria listed in People v Clayton (41 AD2d 204 [subsequently codified by statute in CPL 170.40, 210.40 et seq.J) and that these specific criteria contain no reference to a calendar dismissal for failure to prosecute. However, in People v Wingard (33 NY2d 192) the Court of Appeals in affirming the action of the nisi prius court specifically referred to a dismissal for failure to prosecute as a dismissal in the interests of justice within the meaning of CPL 170.40. We, therefore, respectfully disagree with. Bell.
Turning to the second ground, the court regrettably finds itself in the position of being compelled to call the attention of the presentation agency to DR 7-103 (B) of the Code of Professional Responsibility, which reads as follows: “(B) A public prosecutor or other government lawyer in criminal litigation shall make timely disclosure to counsel for the defendant, or to the defendant if he has no counsel, of the existence of evidence, known to the prosecutor or other government lawyer, that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment.”
This ethical injunction includes a situation such as the one at bar in which a complainant is unavailable (cf. People v Jones, 87 Misc 2d 931).*
*348 The notion that a defendant or respondent will plead guilty when a complainant is permanently unavailable to testify can only be founded upon either of two possibilities:
(a) that the prosecutor in flagrant violation of his or her ethical obligation to disclose this unavailability to adverse counsel has failed to do so; or
(b) that knowing that the prosecution cannot possibly succeed, defense counsel nevertheless allows his client to plead guilty.
The first possibility properly furnishes grounds for professionally disciplining a prosecutor; the second a basis for disciplining defense counsel for professional incompetence. We cannot therefore believe that this argument has been advanced other than tongue-in-cheek.
In the final analysis, the within motion (and dozens like it) is based not on any special equity prevailing in this case, but on systemic considerations applicable to any proceeding commenced in this court or the adult criminal courts. As such, it reiterates the same arguments presented by the New York District Attorneys Association when CPL 160.50 was first drafted and approved, arguments rejected both by the Legislature and the Governor. (See Governor’s bill jacket, memorandum of NY State District Attorneys Association, June 17, 1976, L 1976, ch 877; memorandum, Aug. 3, 1977, L 1977, ch 905.)
A motion to prevent sealing which states no special equities or unique facts peculiar to a particular prosecution at bar is in the final analysis, framed upon a disagreement with legislative articulation of the public policy of this State and is properly addressed to the Legislature rather than the court. There is accordingly no basis to deny sealing.
In so ruling the court takes special pains to underscore two critically important points: (1) The notion that the “sealing” statutes are grounded in the presumption of innocence is based upon the nonlegal or lay sense of that term, in effect an articulation of a philosophy which is far *349 different from the precise legal meaning of that term as defined by the highest tribunal of the land. The legally precise parameters of this phrase have been enunciated by the Supreme Court in Taylor v Kentucky (436 US 478) as simply another way of requiring that guilt be proven beyond a reasonable doubt. It is an evidentiary presumption which attaches at the trial which must be charged by the court to the trier of the facts. It has no applicability to arraignment or pretrial proceedings (cf. Bell v Wolfish, 441 US 520, 533), or to the sentencing or dispositional phase which may properly consider prior arrests not resulting in convictions. (Williams v New York, 337 US 241; see, also, People v Wright, 104 Misc 2d 911.) It is to be hoped that counsel who cite the presumption of innocence in court will do so based upon its legal rather than philosophical implications. (2) The notion that a court-sealing order forever cuts off access to the underlying docket or the information it contains by the court or its auxiliary services seems to have grown like Topsy exclusively in the Family Court without any basis in law. It is therefore appropriate to call a halt to the spreading body of folklore and mystique surrounding this very simple procedure. A sealing order is a device formulated by the Legislature to protect one who has been arrested but not convicted from having the record of his arrest haunt him in the future in applications for employment, college, bonding, the Armed Forces, etc. This protection shields a defendant from the outside world and acts to close off outside access to court records which would ordinarily be matters of public record, either by their very nature as such, or, in the case of the juvenile court, by virtue of a so-called “voluntary” authorization executed by an applicant without which a prospective employer or college would not favorably consider him. In practical application, a sealing order in the criminal courts translates into a procedure where the docket in question and/or any reference to it is kept under special lock accessible to court personnel or auxiliary services through the medium of a simple ex parte application to temporarily unseal made on the record under suitable pseudonym or by docket number. The strange notion that these magic words sealing a docket forever cut off access to it or the information it contains either by the court itself or by auxiliary personnel *350 on proper application to a Judge is sheer nonsense on stilts. As a matter of law, a sealing order simply addresses itself to the arrest record, fingerprints, and the public availability of the court docket. It has been held that where a sealing order is entered, and the dismissal is not on the merits, the People may recharge the very same crime in a new information or indictment (Ciraulo v Dillon, 108 Misc 2d 751). And as one court articulated it: “Insofar as it is not the intent of the statute * * * that court records be sealed, but only the records of the Division of Criminal Justice Services and the police department or any law enforcement agency [that] the court’s record * * * would be unaffected by the sealing herein”. (People v Byrne, 105 Misc 2d 401, 403.)
Finally, as we held in People v Anonymous (99 Misc 2d 537), in a different context, no Legislature may properly tread upon a courts’ inherent power to function. This power transcends legislative, even constitutional bounds (cf. People v Bell, 95 Misc 2d 360, 364, supra).
It is most appropriate that these simple insights be disseminated to the Family Court Bar as well as to court personnel and auxiliary services.
Motion denied.

 People v Jones (87 Misc 2d 931) which holds to the contrary, limits its discussions to the issue of whether or not this information is so-called Brady material (Brady v Maryland, 373 US 83). While Canon 7 of the Code of Professional Responsibility is fleetingly mentioned by the Jones court, the determination rests mainly on the Brady issue. With the emphasis placed upon the consideration of a so-called “collapsible” case resulting from disclosure of the evidence in question or lack of it, Jones is distinguishable by virtue of the strong case which the People would otherwise have been able to *348 present even without the missing witness, while the prosecution at bar utterly collapsed without the witness in question. Further, a state of facts which brings Brady into play must be of such magnitude as to trigger the constitutional standard, as opposed to the prosecutor’s ethical obligations under Canon 7 which, needless to say, always exist.