Breitel, J.
Defendant, convicted of felony on his plea of guilty, has sought to set aside his plea on the ground that it was exacted from him by the duress of circumstances. The ground is one often asserted, and entitled more often than not to short shrift when supported only by the convicted defendant’s say-so. What distinguishes this case is that during prior court proceedings and from information supplied to the court by his lawyer, it remains undisputed that apart from any other motives he might be supposed to have had, defendant was sexually abused, beaten, and in “ potential danger ” of his life, so long as he remained in the local jail. During this period he requested, in vain, transfer to another jail, and when he finally pleaded guilty he was concerned with whether and how soon he would be removed from the local jail.
The pleading court, after a hearing, denied defendant’s motion to withdraw his guilty plea, finding generally that defendant was not believable and that it did not believe him. If the issue turned on defendant’s credibility alone that would be the end of the matter, but it does not. The court transcripts and the information conveyed by defendant’s lawyer, never disputed, demonstrate that to some extent defendant’s guilty plea was occasioned by duress. If that be true, it is not tolerable that the plea should stand (cf. People v. Nixon, 21 N Y 2d 338, 344; People v. Serrano, 15 N Y 2d 304, 310). Hence, there should be a reversal, a vacatur of the conviction, and the action remanded.
Under prosecution for criminal possession of stolen property and dangerous weapons, defendant was detained in the Queens House of Detention since sometime after his arrest on February 25,1970, until after he pleaded guilty. During this period in *318 October, 1970, the jail was the scene of riots and a take-over by the inmates. On November 9, 1970 defendant pleaded guilty to a class D felony to cover the described charges and a later indictment for sodomy arising out of an event in the Queens jail. At the time of the plea, there were conversations among the pleading Judge, defendant’s Legal Aid lawyer, and defendant, whether, if defendant pleaded guilty, he would be transferred out of the Queens jail to the Manhattan jail. Before that defendant had made several motions seeking a transfer reciting the abuse to which he had been subjected. The motions had been denied. On the plea withdrawal hearing defendant’s Legal Aid lawyer testified that the warden, the captain, and several guards at the jail had told him that defendant was in “potential danger” of his life. He testified, moreover, that defendant was not persuaded to plead to a class D felony rather than the lesser class E felony until he was told that the pleading court would not entertain a transfer from the Queens jail if the Queens sodomy indictment were still outstanding.
During the plea withdrawal hearing defendant’s then lawyer said on the record that defendant had said to him that if withdrawal of the plea meant that he would have to stay in the Queens jail pending trial, he wished to withdraw the motion. There is more testimony of this sort emanating from defendant’s lawyers and attributed to the prison personnel, without contradiction. It is not useful to detail it all. It suffices to show that more than defendant’s credibility on his say-so was presented in open court before the plea and, later, in testimony on the plea withdrawal hearing.
Critical to the sequence of events is that defendant, before sentence, moved to withdraw his plea on December 16, 1970, he having pleaded guilty on November 9, 1970. Moreover, he had filed papers in the Federal court in another proceeding, several days before he pleaded guilty, describing the barbaric abuse to which he had been subjected in the Queens jail. The letters defendant sent to the Federal court were received in evidence on the plea withdrawal hearing.
On this history of defendant’s plea it is precious to explore whether he is in fact guilty of the crimes charged (assume he is), whether he was or is unable to stand trial and avoid a conviction (that may well be), or whether he is a homosexual *319 and, therefore, a likely victim in a jail (assume he is), and whether as a result of the foregoing he was in part motivated to plead guilty (assume he was). The guilty plea may not stand, even if only in part it was indisputably motivated by duress visited on defendant by anarchic and criminal conditions in the jail. Nor should it be necessary that there be a high probability that the guilty plea was tainted. The State is not so short of grist for its criminal mill that it must absorb convictions obtained in the corroborated circumstances present here. No one may consider the events in this case, quite apart from defendant’s testimonial versions, without concluding that there is palpable evidence that the guilty plea lacks the integrity and stability acceptable in a civilized criminal system.
In short, as a matter of law, the plea is tainted if it appears on the uncontradicted evidence that it was motivated in part by the barbarous prison abuses directly involving Flowers. It is immaterial that the hearing court did not believe that the alleged duress was the only motivation for the plea, assuming that is what the hearing court meant by its general statement that it disbelieved Flowers. Thus, on this analysis, the court does not disturb, as it may not, the findings of fact, as contrasted with reviewable questions of law, propounded by the hearing court.
Accordingly, the order of the Appellate Division should be reversed, the motion to withdraw the plea of guilty granted, and the action remanded to the trial court for appropriate proceedings.