Fuchsberg, J. (dissenting).
In the extraordinary circumstances of this case, the plea taken by the defendant was the product of a "manifest injustice” and therefore should not be permitted to stand (cf. ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty, § 2.1, p 52; Note, 64 Yale LJ 590, 592).
As background, it is noteworthy that the indictments against the defendant were a concomitant of his unfortunate matrimonial difficulties. The charges on which he was convicted after a trial, since found to have been permeated with prejudice, arose out of his discovery of another man at the apartment where his children and estranged wife resided; the *306 plea which is the subject of this appeal was to an accusation associated with an intrusion into his mother-in-law’s house and other incidents involving his wife.
The record is very revealing as to the situation in which the defendant found himself when he accepted the trial prosecutor’s proposal that he plead. Even his "aggressive defense” had availed him nought in the face of the unfair trial. Freshly convicted as the result of prosecutorial trial tactics so gross that the Appellate Division was later to describe them as "intentional * * * injection of] racial prejudice” (50 AD2d 769),* he faced a choice between what he had every reason to expect would be but a repetition of the performance and result tolerated at the completed trial, or an acceptance of the carrot stick of an offer to plead guilty and receive only a sentence which, because it was to be concurrent with that meted out in the first case, would bring him no actual punishment. In the light , of the coercive pressures and inducements of these circumstances, it was hardly an offer that he could refuse.
It is difficult to believe that the defendant’s witnessing of the outrageous means which then appeared permissible of employment against him in a court of law would not have a demoralizing effect. A plea, a form of confession (Boykin v Alabama, 395 US 238, 242), when so brought about, whether through the force of things as extreme as physical torture or, as here, by the subtler means of insidious language and events, may not withstand the scrutiny of due process (see Waley v Johnston, 316 US 101; Walker v Johnston, 312 US 275; Smith v O’Grady, 312 US 329; cf. Henderson v Morgan, 426 US 637).
Additionally, when the instrument of coercion is official misconduct, strong societal policy calls down sanctions, which, in the effectuation of their deterrent purpose, are so pervasive that they may be imposed irrespective of the actual guilt of a particular defendant (see Thomas v Teets, 205 F2d 236; Nickels v State, 86 Fla 208; Note, 55 Col L Rev 366, 369; cf. People v Flowers, 30 NY2d 315).
As our court had occasion to say in People v Flowers *307 (supra), where a guilty plea was vacated because of unusually oppressive conditions at a local jail, in which the defendant there had been lodged, the "State is not so short of grist for its criminal mill that it must absorb convictions” obtained under such circumstances (30 NY2d, at p 319).
In short, an elementary sense of justice requires vacatur of the plea and remittal to the Supreme Court, Bronx County, for further proceedings.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones and Cooke concur in memorandum; Judge Fuchsberg dissents and votes to reverse in a separate opinion in which Judge Wachtler concurs.
Order affirmed.

 While the Appellate Division characterized its determination that the trial had been unfair as "inescapable”, it did not vacate the plea here because it apparently felt bound by its earlier decision in People v Alicea (46 AD2d 322), which had not yet then been reversed (37 NY2d 601). It is interesting that the trial prosecutor in Alicea and in the present case are one and the same.