[873 NYS2d 355]

The People of the State of New York, Respondent, v Terry E. Grant, Appellant.

Second Department, February 24, 2009

### APPEARANCES OF COUNSEL

*Howard R. Birnbach*, Great Neck, for appellant.

*Kathleen M. Rice, District Attorney*, Mineola (*Judith R. Sternberg* and *Barbara Kornblau* of counsel), for respondent.

### OPINION OF THE COURT

FISHER, J.P.

The defendant here pleaded guilty only after the court told him that, if he did not, he would be remanded until his next scheduled court appearance. The issue presented on this appeal is whether the plea was voluntary. We hold that it was not.

In November 2005, the People filed a felony complaint charging the defendant with two counts of falsifying business records in the first degree. He was arraigned on the complaint and released on $1,000 bail. Seven months later, a grand jury returned a 40-count indictment charging the defendant with two counts of grand larceny in the third degree, scheme to defraud in the first degree, grand larceny in the fourth degree, petit larceny, attempted grand larceny in the fourth degree, attempted petit larceny, twenty-four counts of falsifying business records in the first degree, seven counts of insurance fraud in the fourth degree, and two counts of insurance fraud in the fifth degree. The charges were based on allegations that, between December 21, 1999 and October 13, 2005, the defendant, a licensed dentist with a practice in Hempstead, New York, repeatedly submitted falsified claim forms to a number of insurance carriers and attempted to alter his own business records to avoid detection.

At the defendant's arraignment on the indictment on July 6, 2006, the People asked that bail be fixed at $250,000. The court, however, continued the $1,000 bail previously set, but directed a "conditional release" which involved placing the defendant under the supervision of the Nassau County Probation Department (hereinafter the Probation Department) pursuant to a "pretrial release program." The court further directed that the defendant surrender his passport and report to the Nassau County Investigation Bureau for processing. Some five weeks later, on August 10, 2006, the People renewed their request for a higher bail, asserting that the defendant had failed to comply with conditions set by the Probation Department. The court did

not change the defendant's bail status but admonished him to comply with the conditions and warned that, if he did not, it would "set high bail."

When the case was called on November 21, 2006, the court observed that it was "ripe for trial." On December 18, 2006, the court stated that the case was "getting old meaning it's going to be either disposed of soon or it's going to be tried soon." The court then told the defendant that it had reviewed the minutes of the grand jury proceedings and had concluded that, in view of the "overwhelming" proof presented, his chances of prevailing at trial were slim. The court advised the defendant that, if he were convicted after trial, he would be sentenced either "to a short period of upstate time . . . or downstate time for a long period . . . [such as] one year or consecutive nine-month sentences or something like that." The court stated, however, that, if the defendant were to plead guilty within the next two days, it would order a presentence report and then either sentence him to "probation coupled with restitution" or, if it "had to impose jail," it would permit him to withdraw the guilty plea. The court warned the defendant that "[t]he time has come for you to fish or cut bait." The court said it would adjourn the case for the defendant to decide whether or not to accept the plea offer, and that, if he did not, the case would be "farmed out for trial."

For reasons not clear from the record, the matter was subsequently adjourned a number of times until all parties again appeared in court on Wednesday, January 3, 2007. Plea discussions continued, and the court revealed that it had received a letter from the Probation Department complaining of the defendant's failure to comply fully with the conditions of his release. The Probation Department asked that the court "admonish the defendant and remind him that he must report as directed if he wishes to remain at liberty." After reading the letter to the parties, the court addressed the defendant as follows: "I think I'm going to take a whole lot more drastic action than that, Mr. Grant. Now, do you want the plea deal? Yes or no? Today." After counsel responded that he and the defendant thought they had until Monday to decide on the plea offer, the following exchanges occurred:

> "THE COURT: That's—that is a situation that has to be addressed and I will address it right now. *If he wishes the plea deal, then I will—and he takes this plea, I will continue him in the bail status that he is*

because if he violates the terms of his bail while he is pending sentence, I will not be bound by my commitment. *If he doesn't take the plea deal today, I'm going to remand him until Monday* and I can address—I can address this in open court. Now yes, you can speak to your client, Mr. Kutner [defense counsel], but you're not doing it outside. You'll do it here and under the supervision of my officers and I'll take the bench in five minutes.

"MR. KUTNER: Thank you.

[Whereupon, a brief recess was taken.]

"THE COURT: All right, Mr. Kutner, what was your client's decision?

"MR. KUTNER: I still don't know, Judge.

"THE COURT: All right. Well, if you don't know, then—.

"THE DEFENDANT: Hold up. Excuse me, your Honor. I was still trying to ration out because I thought I had until Monday, but the new information he shared with me—.

"THE COURT: *You do have until Monday, but I'm going to remand you.*

"THE DEFENDANT: Right. And that's new information to me so I'm trying to get that from—.

"MR. KUTNER: So, Judge, if he's remanded until Monday, he still has the possibility of pleading with a no jail commitment as of Monday?

"THE COURT: Yes.

"MR. KUTNER: All right.

[Pause.]

"MR. KUTNER: Judge, we're going to take the plea" (emphasis supplied).

The terms of the plea were then spread on the record. The defendant would plead guilty to two counts of grand larceny in the third degree, scheme to defraud in the first degree, grand larceny in the fourth degree, and falsifying business records in the first degree; he would waive his right to appeal, pay restitution in the amount of $10,102.20, and surrender his license to

practice dentistry. At the time of sentence, the People would dismiss the remaining counts of the indictment, and would recommend that the defendant be fined $20,000 and sentenced to an indeterminate prison term of 1⅓ to 4 years. The court would then sentence the defendant to probation with restitution and the suspension of his dentistry license, unless it felt, based upon the presentence report, that it could not fulfill its promise of a nonjail sentence. In that event, the defendant would be permitted to withdraw his plea of guilty.

The defendant asked some questions, particularly about the suspension of his dentistry license. The court replied that the suspension of the license was a condition of the plea, "but it's not going to be carried forth until date of sentence. If things happen between now and [the] sentence that make me change my mind, then that's a possibility. But right now it's a condition." The court then conducted an allocution which included the following exchange:

> "THE COURT: Now, has anyone made any threats or forced you in any way to plead guilty here today? Now what I mean by that is exactly what I say. Is this voluntary on your part? It may be uncomfortable and it may not be easy to do, but considering the circumstances that you're in, has anyone forced you to plead guilty here today?
>
> "THE DEFENDANT: *It would be a factor that I would have to be reprimanded* [sic] *or—*
>
> "THE COURT: The answer is yes or no.
>
> "THE DEFENDANT: Can you repeat the question?
>
> "THE COURT: Has anyone forced you to plead guilty here today or are you doing it on your own decision realizing the situation you're in.
>
> "THE DEFENDANT: No" (emphasis supplied).

The allocution concluded and the court adjourned the matter for two months for the preparation of a presentence report. The defendant's bail was continued.

Thereafter, the matter languished as the defendant twice changed attorneys and moved to withdraw his guilty plea, inter alia, on the ground that the court had coerced him to plead guilty by threatening to remand him if he did not. By order entered August 29, 2007, the court (Peck, J.) denied the motion, finding, among other things, that the defendant had not been

coerced into pleading guilty. In its decision, the court wrote, in pertinent part:

> "As to the issue of remanding the defendant if a plea did not take place, an examination of the historical record of the case, especially the Court dates prior to the defendant's plea date is necessary to fully understand what transpired. The defendant's custody status was that he was released to the custody of the Nassau County Probation Department. Pending the outcome of his case, he failed on eight separate occasions to comply with their mandates. The defendant had to comply with the required mandates of the Nassau County Probation Department which he failed to do."

The court ultimately sentenced the defendant, inter alia, to concurrent terms of five years' probation, restitution in the amount of $10,102.20, and a fine of $20,000. The court, however, did not require the defendant to surrender his dentistry license. The defendant now appeals, challenging the voluntariness of his plea.

In order to be valid, a guilty plea must be entered voluntarily, knowingly, and intelligently (*see People v Hill*, 9 NY3d 189, 191 [2007]; *People v Fiumefreddo*, 82 NY2d 536, 543 [1993]). A plea is voluntary if it represents a choice freely made by the defendant among legitimate alternatives (*see North Carolina v Alford*, 400 US 25, 31 [1970]; *People v Hale*, 93 NY2d 454, 463 [1999]; *cf. People v Vargas*, 88 NY2d 363, 377 [1996]). When offered benefits for pleading guilty and confronted with the risk of more severe punishment if a plea offer is refused, a defendant will certainly feel pressure to plead guilty. But such pressure does not render a guilty plea involuntary because " 'the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas' " (*Bordenkircher v Hayes*, 434 US 357, 364 [1978], quoting *Chaffin v Stynchcombe*, 412 US 17, 31 [1973]; *see People v Pena*, 50 NY2d 400, 411-412 [1980], *cert denied* 449 US 1087 [1981]).

New York, like most other jurisdictions, has long accepted the practice of plea bargaining, noting that it "serves important functions for both prosecutors and defendants" (*Matter of Hynes v Tomei*, 92 NY2d 613, 624-625 [1998], *cert denied* 527 US 1015 [1999]; *see People v Selikoff*, 35 NY2d 227, 233 [1974], *cert denied* 419 US 1122 [1975]). Indeed, plea bargaining is

predicated on mutuality of advantage (*see Brady v United States*, 397 US 742, 752 [1970]; *People v Seaberg*, 74 NY2d 1, 7 [1989]; *see also People v Jenkins*, 11 NY3d 282, 290 [2008, Pigott, J., dissenting]). In return for surrendering the right to put the prosecution to its proof at a trial and for giving up the possibility of acquittal, the defendant receives consideration, almost always in the form of a sentence more lenient than might reasonably be expected upon a conviction after trial (*see People v Pena*, 50 NY2d at 412). And, in return for agreeing to the more lenient sentence, the prosecution obtains the certainty of conviction and punishment without having to expose witnesses to the rigors of trial or to establish the defendant's guilt to a jury's satisfaction beyond a reasonable doubt (*see People v Selikoff*, 35 NY2d at 233).

In practice, plea bargaining in New York is a process by which the prosecution and the defendant, often with the active participation of the court, negotiate to find a disposition that is both acceptable to the court and prosecution and sufficiently lenient to induce the defendant to relinquish the right to a trial, and all the rights associated with a trial. Aside from statutory sentencing rules, the factors generally at play in plea negotiations include the nature of the conduct alleged, the defendant's criminal history, the likelihood of conviction after trial, the probable sentence after such a conviction, and the need to dispose of criminal cases without trial so that the particular local jurisdiction can manage its criminal caseload.

In contrast, bail status concerns only "the kind and degree of control or restriction that is necessary to secure [the defendant's] attendance when required" (CPL 510.30 [2] [a]; *cf. Matter of Sardino v State Commn. on Jud. Conduct*, 58 NY2d 286, 289 [1983]). It has no legitimate connection to the mutuality of advantage underlying plea bargaining because it does not relate either to the more lenient sentence for which the defendant is negotiating or to the waiver of trial and the certainty of conviction the prosecution is seeking. The prospect of an immediate change in bail status, therefore, is an inappropriate consideration in plea negotiations.

Moreover, it is hardly befitting a legitimate system of plea bargaining to require a defendant, in effect, to choose between, on the one hand, admitting guilt and remaining free, and, on the other, maintaining innocence and going to jail (*see People v Sung Min*, 249 AD2d 130, 132 [1998]).

Because an immediate change in the defendant's bail status is not an appropriate consideration in plea negotiations, when the

court threatens to increase bail or remand the defendant unless a guilty plea is entered, any resulting plea cannot be deemed voluntary because the defendant's decision to plead guilty would no longer represent a free choice among legitimate alternatives. We hold, therefore, that a threatened change in bail status may not be used by the prosecution or the court as a "bargaining chip" to persuade a defendant to plead guilty. Here, the record clearly reflects both that the court made an unadorned threat to remand the defendant without bail if he did not plead guilty, and that the threat was a powerful factor in persuading the defendant to enter the plea when he did. We conclude, therefore, that the defendant's guilty plea was not voluntary.

We hasten to add here that the defendant's failure to comply with conditions of his release, as well as his seeming desire to manipulate and delay proceedings, might well have justified a change in his bail status. But the court did not change the defendant's bail status. Instead, it only threatened to do so for no readily discernible reason other than to encourage him to plead guilty. That threat, made for that purpose, rendered the plea involuntary.

Finally, we recognize that, in the course of plea negotiations, it may be the defendant who first inquires as to the court's intentions with respect to bail. This most often happens when a defendant who is incarcerated in lieu of bail is conditionally offered a disposition that carries no further jail time. We think that the better practice when, during plea negotiations, a defendant inquires about bail is for the court to remind the defendant that the parties are engaged in plea bargaining, not "bail bargaining," and that the question of bail will be addressed only after plea negotiations are completed.

Because we conclude that the defendant's guilty plea was not voluntarily entered, the judgment is reversed, the defendant's guilty plea is vacated, and the matter is remitted to the Supreme Court, Nassau County for further proceedings.

COVELLO, MCCARTHY and LEVENTHAL, JJ., concur.

Ordered that the judgment is reversed, on the law, the defendant's guilty plea is vacated, and the matter is remitted to Supreme Court, Nassau County for further proceedings.