People v Hollman (2021 NY Slip Op 04617)





People v Hollman


2021 NY Slip Op 04617


Decided on August 4, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 4, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

LEONARD B. AUSTIN, J.P.
COLLEEN D. DUFFY
ANGELA G. IANNACCI
PAUL WOOTEN, JJ.


2020-00584

[*1]The People of the State of New York, respondent,
v
Donald Hollman, appellant.


Jan Murphy, Huntington, NY, for appellant.
Joyce Smith, Acting District Attorney, Mineola, NY (Jason R. Richards and Benjamin Kussman of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Nassau County (Teresa K. Corrigan, J.), rendered December 23, 2019, convicting him of unlicensed possession of explosives in violation of Labor Law § 458(1), reckless endangerment in the second degree (four counts), and attempted criminal sale of a controlled substance in the fifth degree, upon his plea of guilty, and imposing sentence.
ORDERED that the judgment is affirmed.
The defendant pleaded guilty to unlicensed possession of explosives in violation of Labor Law § 458(1), four counts of reckless endangerment in the second degree (Penal Law § 120.20), and attempted criminal sale of a controlled substance in the fifth degree (Penal Law §§ 220.31, 110.00). He thereafter moved, by newly appointed counsel, to withdraw the plea, which motion was denied, and sentence was imposed.
In order to be valid and enforceable, a plea of guilty must be entered knowingly, voluntarily, and intelligently (see People v Brown, 14 NY3d 113, 116). "A guilty plea is voluntary only if it represents an informed choice freely made by defendant among other valid alternatives" (id. at 116; see North Carolina v Alford, 400 US 25, 31). "When a defendant moves to withdraw a guilty plea, the nature and extent of the fact-finding inquiry 'rest[s] largely in the discretion of the Judge to whom the motion is made' and a hearing will be granted only in rare instances" (People v Brown, 14 NY3d at 116, quoting People v Tinsley, 35 NY2d 926, 927).
Here, contrary to the conclusion of our dissenting colleague, the record demonstrates that the defendant's plea of guilty was made knowingly, voluntarily, and intelligently, and this is not one of those "rare instances" in which a hearing was required (People v Brown, 14 NY3d at 116; see People v Lockwood, 178 AD3d 855, 856; People v Johnson, 170 AD3d 1195, 1196; People v Bandelt, 304 AD2d 835; People v Davis, 144 AD2d 576). The plea allocution manifests the defendant's understanding of the terms of the plea agreement, including the sentencing promise, which was clearly explained to him, and the limited circumstances under which he would be permitted to withdraw the guilty plea. The defendant was told that he could ask questions of his counsel at any time, was afforded time to consult with counsel, confirmed that he had sufficient [*2]opportunity to do so, and confirmed that he was satisfied with counsel's representation. The defendant unequivocally admitted the facts of his offenses on the record, including that he possessed "explosives" without a license (Labor Law § 458[1]). The defendant also readily admitted that he had thrown a "lit firework" over a fence into his neighbor's yard, and that he had knowingly and unlawfully attempted to sell drugs, supplying that the drug in question was "THC."
The defendant made it clear at the beginning of the plea proceeding that he was unhappy that he would be remanded upon pleading guilty, as he had expected that he would be released for several weeks and then remanded at sentencing. Nevertheless, the defendant unequivocally indicated to the plea court: "I do want to take the plea." The defendant subsequently made a number of shifting complaints, such as a claim of an injured finger at the plea proceeding, which was not repeated on the motion to withdraw the plea or at sentencing, a claim on the motion and at sentencing that he had been under the influence of medical marijuana, and a claim at sentencing, not included in his motion, that his prior attorney had advised him that he could take his plea back at any time. The contentions that these alleged circumstances rendered his plea involuntary are all belied by the defendant's statements at the plea allocution (see People v McVay, 140 AD3d 1090; People v Innocent, 132 AD3d 696, 697).
The defendant also contended in his motion that he had inadequate opportunity to speak with his counsel regarding the case and any defenses. However, it is notable that when the plea court endeavored to inquire further as to an equivocal statement by the defendant that he was able to discuss "some" of the facts of the case with his counsel, the defendant terminated that inquiry, and confirmed that he had sufficient time to speak with his attorney. The defendant also does not dispute the People's assertion that, while the defendant was out on bail, he and defense counsel met with the prosecutor to view surveillance video allegedly depicting the explosives and reckless endangerment crimes. Although our dissenting colleague assumes that the defendant and defense counsel's only opportunity to talk at that time was when they were actually in the prosecutor's office, and that defense counsel neglected to otherwise confer with the defendant, the record does not so reflect. Moreover, in neither his motion nor at sentencing, or even on appeal, did the defendant specify any defenses that counsel failed to discuss with him.
The dissent's heavy reliance upon People v Hollmond (191 AD3d 120) is unavailing. While in Hollmond the defendant also claimed that his guilty plea was involuntary because he did not have adequate opportunity to consult with counsel, that is where the similarity with the instant case ends. In Hollmond, the defendant "consistently and routinely" rejected plea offers and insisted on going to trial (id. at 142). However, unlike the defendant in the present case who was out on bail, the defendant in Hollmond was in custody, and the Department of Corrections had the defendant housed at upstate facilities 100 miles or more from New York City, the place of trial. The Department of Corrections refused, despite multiple court orders, a letter to the prison superintendent from the trial judge, and intervention by the prosecutor, to move the defendant closer both before and for the duration of the trial (see id. at 123-127). Defense counsel repeatedly stated on the record that he had not been able to adequately consult with the defendant due to this situation and indicated that he would not go forward with a trial unless ordered to do so (see id. at 122-124). Although the defendant was not transferred to a closer facility, the trial was scheduled and on the day of jury selection, the defendant agreed to accept a plea offer that he had previously rejected (see id. at 127, 142). The plea court's inquiries of the defendant in Hollmond, and his responses thereto, had to be weighed against all of these circumstances (see id. at 142), including the refusal of the Department of Corrections to make the defendant accessible to defense counsel. In the instant case, the factual context of the plea court's inquiries and the defendant's responses is simply incomparable to that presented in Hollmond.
At bottom, the record here demonstrates that the defendant was feeling pressure to decide whether to plead guilty and be remanded or face greater charges if the People presented the matter to the grand jury. Indeed, the defendant's precise words were: "I am forced to plead because they don't—they will put me in the Grand Jury." However, as this Court has observed: "When offered benefits for pleading guilty and confronted with the risk of more severe punishment if a plea offer is refused, a defendant will certainly feel pressure to plead guilty. But such pressure does not [*3]render a guilty plea involuntary because 'the imposition of these difficult choices [is] an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas'" (People v Grant, 61 AD3d 177, 182, quoting Bordenkircher v Hayes, 434 US 357, 364 [internal quotation marks omitted]).
Accordingly, the Supreme Court did not improvidently exercise its discretion in denying the defendant's motion to withdraw his plea without a hearing (see People v Lockwood, 178 AD3d at 856; People v Johnson, 170 AD3d at 1196; People v Bandelt, 304 AD2d 835; People v Davis, 144 AD2d 576; cf. People v Hollmond, 191 AD3d 120).
The defendant's remaining contentions are without merit.
AUSTIN, J.P., DUFFY and IANNACCI, JJ., concur.
WOOTEN, J., dissents, and votes to reverse the judgment, on the law and as a matter of discretion in the interest of justice, grant the defendant's motion to withdraw his plea of guilty, and remit the matter to the Supreme Court, Nassau County, for further proceedings on the superior court information, with the following memorandum:
Respectfully, I dissent from my colleagues in the majority, and vote to reverse the judgment and grant the defendant's motion to withdraw his plea of guilty.
"[I]n order to be valid and enforceable, a guilty plea must be entered voluntarily, knowingly and intelligently" (People v Brown, 14 NY3d 113, 116). "A guilty plea is voluntary only if it represents an informed choice freely made by defendant among other valid alternatives" (id. at 116; see North Carolina v Alford, 400 US 25, 31). Although trial courts "need not engage in any particular litany" (People v Conceicao, 26 NY3d 375, 382), they have "'a vital responsibility'" to ensure that a defendant who enters a plea of guilty does so knowingly, voluntarily, and intelligently (id. at 382, quoting People v Harris, 61 NY2d 9, 19). Where a defendant makes statements calling into question the voluntariness of the plea, "the trial court has a duty to inquire further to ensure that defendant's guilty plea is knowing and voluntary" (People v Lopez, 71 NY2d 662, 666).
"The decision to permit a defendant to withdraw a previously entered plea of guilty, as well as the nature and extent of the fact-finding inquiry, rests largely within the sound discretion of the court and generally will not be disturbed absent an improvident exercise of discretion" (People v Jemmott, 125 AD3d 1005, 1006; see CPL 220.60[3]). "[A] guilty plea may be vacated on the ground that it was 'coerced, either by actual physical compulsion, threats and the like or "by the duress of circumstances"'" (People v Hollmond, 191 AD3d 120, 136, quoting People v White, 32 NY2d 393, 399, quoting People v Flowers, 30 NY2d 315, 317). "While 'bare and unsubstantiated claims of coercion or duress, without more, are insufficient to warrant vacatur of a guilty plea . . . , vacatur may be warranted where the record substantiates a defendant's claim that a guilty plea was motivated, at least in part, by some unduly coercive circumstance'" (People v Wentland, 191 AD3d 704, 707, quoting People v Hollmond, 191 AD3d at 137). Further, the guilty plea of a defendant who was deprived of the fundamental right to counsel must be vacated, as the deprivation of such right "may effectively compel a defendant to plead guilty 'out of necessity'" (People v Hollmond, 191 AD3d at 137, quoting People v Seaberg, 74 NY2d 1, 9). "A court determining the voluntariness of a plea must review the record as a whole and the circumstances of the plea in its totality" (People v Sougou, 26 NY3d 1052, 1055).
Here, at the plea hearing on July 18, 2019, the defendant initially entered a plea of not guilty to the charges against him. The prosecutor then presented the terms of a plea offer and requested the defendant enter a plea of guilty, and the defendant's assigned counsel (hereinafter defense counsel) "join[ed] in the application." At that point, the Supreme Court asked the defendant "if you've just heard what both attorneys said about your desire to plead guilty" and if that was "something you would like to do," and the defendant responded "[y]es."
However, when the Supreme Court then asked the defendant if he "had an [*4]opportunity, both today and prior to today, to completely discuss the facts of your case with your attorney," the defendant replied "[t]oday is the first day." The court asked "[t]oday is the first day you discussed the facts of the case with your attorney?" and the defendant responded, inter alia, "I'm getting railroaded" and "I am forced to plead because . . . they will put me in the Grand Jury." The defendant added that "I do want to take the plea, but also I thought like they do sentencing like a couple of weeks later" and "I have to get stuff in order." The defendant started to make another statement, "I do want to take the plea, but " and the court interrupted to note that the defendant was "a little bit upset right now," and that "I understand that you are saying you do want to take advantage of this plea of guilty," to which the defendant replied "[y]es, ma'am."
At that point, the Supreme Court asked defense counsel "is today the first time that you were told that this was the arrangement with regards to this disposition?" and defense counsel answered "[n]o." The court asked defense counsel when he spoke to the defendant "about that arrangement," and defense counsel responded "I was advised yesterday that's the condition of the plea and I so advised him immediately." The court then informed the defendant, "[y]ou either take advantage of this disposition today with the understanding I will incarcerate you after you enter your plea of guilty or you don't." The court added that the defendant would be given "a couple of minutes" to discuss the plea with his attorney and decide "if you truly want to go forward with this matter . . . as opposed to potentially facing higher charges should the case go to the Grand Jury."
After the defendant briefly conferred with defense counsel in court, the defendant confirmed that he had enough time to speak to his attorney and wanted to "move forward" with entering a plea of guilty at that time. However, when the Supreme Court then asked the defendant if he "had an opportunity, both today and prior to today, to discuss the facts of your case with your attorney," the defendant responded "[s]ome of them, yes." The court followed up with a question, "[w]hat facts have you not discovered?" and the defendant responded, "[e]verything is fine, ma'am. Everything is fine." The court then repeated its earlier question if the defendant had "an opportunity to discuss the facts of your case with your attorney today and prior to today," and this time, the defendant answered "[y]es."
Shortly thereafter, the Supreme Court asked the defendant if he was "in good physical and mental health as you sit here today," and the defendant replied "I slammed my finger in the door" and "fractured my finger coming out of Dunkin Donuts." The court inquired as to whether that injury "just happened," and the defendant answered "[y]eah." The court asked the defendant if his injury was "getting in the way of you understanding what's going on," and the defendant replied "[n]o, but I told him I had to go to the hospital. He said that you wouldn't accept that, so I had to come in." Without following up on that remark, the court advised the defendant that his paperwork would be marked to ensure he would receive medical attention "[w]hen you go into the jail." The court then stated "I need to make sure that this event that just occurred is not getting in the way of you understanding me," and the defendant answered "[n]ot really." The court indicated that "[n]ot really is a problem," and asked the defendant "[h]ave you understood everything I've said so far," to which the defendant replied "[s]omewhat, yes."
At that point, a bench conference was held off the record. Following the conference, the Supreme Court asked the defendant if his injury was "getting in the way of being able to understand what I'm saying to you," and the defendant answered "[n]o." The court then asked if the defendant's injury was "getting in the way of you being able to concentrate and knowingly and willingly and voluntarily enter[ ] this plea of guilty today," and the defendant answered "[y]es." The court stated "[s]o we're not going to take the plea because it's getting in the way of him taking his plea," and the defendant responded that he was "confused" and "misunderstood" the question. The court then asked if the defendant's pain was "getting in the way of your understanding what I'm talking about," and the defendant answered "[n]o."
Following the plea proceeding, the defendant moved pro se to vacate his plea, resulting in the Supreme Court relieving the defendant's assigned counsel and assigning new counsel. The defendant's newly assigned counsel then filed a motion pursuant to CPL 220.60(3) to withdraw the plea of guilty.
In a supporting affidavit, the defendant averred, inter alia, that defense counsel (1) failed to ever discuss with him "any defenses available to [him] prior to taking the plea"; (2) incorrectly advised him that "the plea was to 2½ years incarceration," rather than 3½ to 7 years, the actual sentence offered on the plea; (3) failed to inform him in advance of the plea proceeding that he would be remanded to prison immediately following the plea, as opposed to on the date of sentencing; and (4) failed to disclose a discussion with an unidentified individual about one of the charges to which he pleaded guilty—attempted criminal sale of a controlled substance in the fifth degree—during which that individual "acknowledge[d] her guilt . . . and asserted [the defendant's] innocence." The defendant added that at the time of the plea proceeding, he was under the influence of medical marijuana. The defendant argued that his plea was not made voluntarily, knowingly, and intelligently, as evidenced by his statements during the plea proceeding, which reflected his confusion.
In an affirmation submitted in opposition to the defendant's motion to withdraw his plea, defense counsel averred, inter alia, that in advance of the plea proceeding, he advised the defendant of the correct term of imprisonment offered on the plea and that the defendant would be remanded "after taking the plea," and "discussed all possible defenses with [the defendant]." Defense counsel also acknowledged having spoken to another individual about "the drug charge," but asserted that the individual's "alleged admission was changed . . . on several occasions after the original statement."
In an order dated December 20, 2019, the Supreme Court denied the defendant's motion to withdraw his plea of guilty on the ground that the record of the plea proceeding "bears out that defendant entered into a knowing, intelligent and voluntary plea," without specifically addressing the assertions raised in the defendant's affidavit.
At the outset of the sentencing proceeding, the defendant reiterated that he was under the influence of medical marijuana during the plea proceeding, stating "I was not in my right mind." The defendant added that prior to the plea proceeding, defense counsel urged him to take the plea and advised him that "even if you took this plea today . . . you could take it back any time you want." The defendant also advised the Supreme Court that after he entered the plea, he learned that defense counsel had "withheld" a statement from a witness "asserting my innocence" with respect to one of the charges to which he pleaded guilty, and admitting that the witness "lied to get me to plea to get herself out of trouble." The defendant maintained that he was "not guilty" and "would rather go to trial." The court did not address the majority of the defendant's assertions, but did address the defendant's claim that he was under the influence of medical marijuana during the plea proceeding, noting that "I have nothing before me that even shows that you were on medical marijuana." The defendant offered to show the court a card which he claimed to have on his person indicating that he took medical marijuana containing THC, which "alter[s] my state," but the court declined to consider the defendant's request and then imposed the sentence.
In my view, the record demonstrates that the defendant's plea of guilty "was motivated, at least in part, by coercive circumstances" (People v Wentland, 191 AD3d at 707). On multiple occasions throughout the plea proceeding, the defendant made statements calling into question the voluntariness of his plea. Early in the plea proceeding, the defendant stated that he was "getting railroaded" and was "forced to plead." Although the defendant stated that he "want[ed] to take the plea," he did not indicate that he was ready to enter a plea at that time. To the contrary, the defendant informed the court that he had not had the opportunity to discuss the facts of his case with defense counsel prior to the plea proceeding.
Once the defendant informed the Supreme Court he was being "forced to plead," without having discussed "the facts of [his] case" with his attorney, the court had a duty to inquire as to whether the defendant was being threatened or coerced, and whether the defendant had thoroughly discussed the facts of the case with defense counsel (see People v Moore, 244 AD2d 706, 707). Instead, while the defendant was attempting to explain himself by stating "I do want to take the plea, but ", the court interrupted to note that the defendant was "a little bit upset right now," and stated "I understand that you are saying you do want to take advantage of this plea of guilty" [*5](emphasis added). The court then focused exclusively on the defendant's concern about being incarcerated immediately after entering a plea, without addressing the more critical matter of whether the defendant had an adequate opportunity to discuss the facts of the case with defense counsel.
Further, without making any inquiry as to whether defense counsel had actually spoken to the defendant about the case, or whether any individual had pressured the defendant to take the plea, the Supreme Court then gave the defendant an ultimatum: "[y]ou either take advantage of this disposition today with the understanding I will incarcerate you after you enter your plea of guilty or you don't" (emphasis added). The court then afforded the defendant an opportunity to speak with defense counsel in court for "a couple of minutes" before making the decision whether to "take advantage of [the plea] as opposed to potentially facing higher charges should the case go to the Grand Jury" (emphasis added). The court gave no indication it was willing to entertain even a brief recess, let alone an adjournment to another date, to ensure the defendant had the opportunity to thoroughly discuss the facts of the case with his attorney in a private setting. Moreover, the court offered no indication that the plea would still be available to the defendant if he was not prepared to enter a plea at that time.
Following the defendant's in-court discussion with defense counsel, the Supreme Court engaged in a rote colloquy, whereby the defendant, in response to the court's questions, confirmed that he "had enough time to speak to [his] attorney" and was not "being forced or railroaded" to enter a plea of guilty "today" (see People v Hollmond, 191 AD3d at 142). While my colleagues in the majority place great weight on the defendant's confirmatory one-word answers to the court's questions, divorced from the context in which they were made, the defendant immediately thereafter continued to equivocate (cf. People v Istvan, 180 AD3d 804, 805). When asked if, following the brief discussion in court with defense counsel, the defendant had an opportunity "to discuss the facts of your case with your attorney," the defendant answered "[s]ome of them, yes" (emphasis added). Based upon this equivocal statement, it is apparent that the defendant's immediately preceding conference with defense counsel did not involve a thorough discussion of the facts of the case, and that the defendant's one-word confirmation to having had sufficient time to speak with his attorney was not a genuine answer.
Despite having been alerted for a second time that the defendant had not fully discussed the facts of the case with his attorney, the Supreme Court conducted only a limited further inquiry, asking "[w]hat facts have you not discussed?", to which the defendant gave a nonresponsive answer, "[e]verything is fine, ma'am. Everything is fine." Without following up to obtain a meaningful and responsive answer as to what facts were not discussed, the court simply re-issued its prior question as to whether the defendant "had an opportunity to discuss the facts of your case with your attorney," to which the defendant finally offered a one-word answer, "[y]es."
Of course, a one-word response of this nature would clearly be sufficient in the absence of circumstances casting doubt on the voluntariness of the plea, as "there is no requirement that the Judge conduct a pro forma inquisition in each case on the off-chance that a defendant who is adequately represented by counsel . . . may nevertheless not know what he [or she] is doing" (People v Francis, 38 NY2d 150, 154). However, where, as here, the defendant's statements "called the court['s] attention to a problem which would not otherwise have been apparent" (id. at 154), specifically that the defendant's plea did not necessarily represent an "informed choice" (People v Brown, 14 NY3d at 116 [emphasis added]), "the trial court ha[d] a duty to inquire further" (People v Lopez, 71 NY2d at 666). Here, the plea court failed to fulfill its duty, after having been alerted by the defendant that he had not fully discussed the facts of his case with his attorney, to adequately inquire as to why the defendant made that representation. In the absence of any explanation for the defendant's statement that he had only discussed "[s]ome" of the facts with defense counsel, it was improper for the plea court to accept the defendant's one-word confirmation that diverged from his preceding statement.
This Court recently reaffirmed these principles in People v Hollmond (191 AD3d 120), in which the Court determined that the defendant's plea of guilty must be vacated based upon statements indicating that the defendant was deprived of the fundamental right to thoroughly consult [*6]with his attorney prior to entering a plea. In that case, despite difficulties arranging meetings between the defendant and defense counsel, the defendant was eventually afforded an opportunity to meet with defense counsel "over lunch" (id. at 126 [internal quotation marks omitted]) several days prior to the entry of his plea, and defense counsel represented that he had spoken with the defendant for "several hours" that day (id. [internal quotation marks omitted]). Further, prior to the entry of the plea, the court obtained confirmations from the defendant that nobody was pressuring him to plead guilty and that he was pleading guilty of his own "free will" (id. at 127 [internal quotation marks omitted]). However, following the entry of his plea, the defendant moved to withdraw the plea, asserting that, inter alia, he felt his attorney could not adequately represent him due to a "lack of knowledge and understanding" of his case, and that defense counsel had strongly encouraged him to take the plea (id. at 128). This Court noted that the Supreme Court "undertook numerous efforts to protect the defendant's fundamental right to consult with his attorney" (id. at 138), but the court "never made any genuine inquiry into whether the defendant had been given adequate time to consult with his attorney" (id. at 142 [emphasis added]), which "undermines the significance of the handful of generalized responses during the plea colloquy" (id.).
This Court's holding in Hollmond is instructive here, as the plea court in this case similarly neglected to make "any genuine inquiry into whether the defendant had been given adequate time to consult with his attorney" prior to requiring the defendant to decide whether to accept the plea, which "undermine[d] the significance of the . . . generalized responses" given by the defendant in response to the court's questions (id.). This is especially true given that the defendant's ultimate confirmation that he had sufficient time to discuss the facts of the case with defense counsel contradicted a statement he had just made, without any explanation elicited as to why the defendant changed his answer in response to the court repeating a generalized question. Moreover, the inconsistent statements given by the defendant as to whether he had sufficient time to discuss the case with his attorney prior to taking the plea were not at all surprising in light of the defendant's belief that he was "forced to plead" and the court's advisement that "[y]ou either take advantage of this disposition today with the understanding I will incarcerate you after you enter your plea of guilty or you don't." Confronted with the choice to either accept the plea at the time of the plea proceeding or else risk forfeiting the ability to take the plea at a later time (after having an adequate opportunity to consult with defense counsel in a private setting), "there is reason to suspect" the defendant was "prepared to give the categorical answers only because [he] kn[ew] that this is the route to eligibility for the . . . plea [bargain]" (People v Nixon, 21 NY2d 338, 355; see People v Hollmond, 191 AD3d at 142).
While the majority correctly notes that the "pressure to plead guilty" (People v Grant, 61 AD3d 177, 182) to avoid "the risk of more severe punishment" (id. at 182) "does not render a guilty plea involuntary" (id.), the majority overlooks that a plea entered before a defendant has had the opportunity to thoroughly consult with counsel cannot ever "represent[ ] an informed choice freely made by defendant among other valid alternatives" (People v Brown, 14 NY3d at 116 [emphasis added]). Where, as here, a defendant expressly alerts the plea court that he did not have a sufficient opportunity to thoroughly discuss the case with counsel, and feels he is "forced to plead," it is incumbent on the plea court to ensure the defendant's fundamental right to counsel is protected, "'not . . . as a mere matter of rote, but with sound and advised discretion'" (Glasser v United States, 315 US 60, 71, quoting Patton v United States, 281 US 276, 312). Plainly, the plea court did not fulfill this duty by merely giving the defendant "a couple of minutes" to speak to his attorney in open court, and then accepting the defendant's ultimate one-word answers given "'out of necessity'" to avoid forfeiting the right to take a plea (People v Hollmond, 191 AD3d at 142, quoting People v Seaberg, 74 NY2d at 9).
To the extent the majority deems the principles espoused in Hollmond not applicable to this case, I disagree. As the majority correctly notes, the defendant's plea in Hollmond was obtained on the date set for jury selection, which created an urgency for the defendant to take the plea, despite his prior rejection of plea offers. However, in emphasizing the defendant's departure from his prior rejection of plea offers, the majority minimizes "the central ongoing issue" (191 AD3d at 142) in Hollmond as to "whether the defendant had been given adequate time to consult with his attorney" (id.). Further, in an effort to distinguish Hollmond, the majority notes that the defendant [*7]in that case was in custody, whereas the defendant in this case was out on bail. This distinction is of no moment, as the underlying reason for the deprivation of a defendant's fundamental right to consult with counsel prior to taking a plea is not determinative. A defendant at liberty at the time of the plea may just as easily be deprived of the right to consult with counsel as an incarcerated defendant where assigned counsel neglects to confer with the defendant. As this Court made clear in Hollmond, that decision stands for the principle that a "rote colloquy" (id.) at a plea proceeding "should be accorded comparatively little weight" next to the failure of a plea court to "meaningfully" inquire as to whether the defendant was afforded adequate time to consult with defense counsel (id.). While this Court in Hollmond also mentioned the defendant's prior rejection of plea offers, it did so to indicate the consistency of the defendant's prior conduct to his ultimate explanation for taking the plea (his attorney's lack of preparation for trial), rather than to signify that Hollmond is only applicable to the precise set of facts in that case (see id.). In any event, while there is no indication in the instant case that a firm date was set for the commencement of trial, the plea court clearly conveyed to the defendant that he had to make the decision whether or not to accept the plea offer during the plea proceeding, without another opportunity to take the plea at a later time after privately and thoroughly discussing the case with defense counsel. Specifically, the plea court informed the defendant that "[y]ou either take advantage of this disposition today . . . or you don't," and that the alternative to taking the plea at that time was to "potentially fac[e] higher charges should the case go to the Grand Jury" (emphasis added). Thus, the record substantiates the defendant's claim that his "plea was motivated, at least in part," by unduly coercive circumstances (id. at 137). Moreover, the circumstances of this case are, if anything, even more problematic than those in Hollmond, as the defendant in Hollmond gave no indication during the plea proceeding that he had not conferred with his attorney beforehand, and the record in that case established that the defendant was at least afforded some time to discuss the case with his attorney several days before the plea was entered (see id. at 141).
Here, aside from the conclusory assertion of defense counsel that "I discussed all possible defenses with [the defendant]," there is no evidence in the record that the defendant had any discussion whatsoever with his attorney regarding the facts of the case or any potential defenses prior to the plea proceeding. My colleagues in the majority state that the record does not reflect that defense counsel neglected to confer with the defendant, but do not identify any portion of the record reflecting that defense counsel actually discussed the facts of the case with the defendant prior to the plea hearing. The only occasion identified by my colleagues in the majority as to when such a discussion might have transpired is a meeting which took place at the office of the prosecution. However, there is no indication in the record that the defendant had an opportunity to engage in a discussion of the facts of the case or any potential defenses with his attorney during that meeting. Moreover, it cannot reasonably be disputed that the office for the prosecution would not be a suitable location for a defendant to candidly discuss the facts of his case with defense counsel (see People v Gamble, 18 NY3d 386, 396 ["the fundamental right to counsel in a criminal case includes the right to consult counsel in private, without fear or danger that the People, in a criminal prosecution, will have access to what has been said"] [internal quotation marks and citation omitted]). Although defense counsel may have had other opportunities to privately confer with the defendant, my colleagues in the majority speculate that such discussion took place, without any support in the record. Indeed, defense counsel never asserted that he discussed the case with the defendant around the time of the meeting at the prosecution's office or mentioned a single other occasion when he met with the defendant to discuss the case. At most, defense counsel offered only a general claim to have "discussed all possible defenses with [the defendant]," without offering even a single example of a potential defense which they discussed.
Further, while it is noted that the defendant stated at the outset of the sentencing proceeding that "th[e] day prior to the plea," he met defense counsel "outside the courthouse," the defendant gave no indication that they discussed the facts of the case or any potential defenses during that encounter. Rather, the defendant indicated that at that time, defense counsel erroneously informed him that the plea was for a sentence of "two and a half years to everything," and that defense counsel urged him to take the plea because "you could take it back any time you want." Thus, the defendant's allegations regarding that meeting only cast further doubt on the voluntariness of the plea, which were "never explored" by the Supreme Court (People v Williams, 35 AD3d 1085, [*8]1086; see People v Jenkins, 72 AD2d 876, 877).
Consequently, there is no basis to discredit the defendant's assertions during the plea proceeding that he had not previously discussed the facts of the case with defense counsel. In any event, the mere fact that the defendant alerted the plea court that he did not feel he had fully discussed the facts of his case with defense counsel (even after the in-court conference) required the court to conduct a genuine inquiry, which, as discussed previously, the plea court failed to do.
Furthermore, shortly after the defendant advised the plea court for a second time that he had not fully discussed the facts of the case with defense counsel, the defendant alerted the court to an additional issue that he had "fractured" his finger, which "just happened" before the plea proceeding. While the defendant indicated that this injury did not prevent him from understanding the proceedings, the defendant also stated "I told him I had to go to the hospital," and "[h]e said that you wouldn't accept that, so I had to come in" (emphasis added). Despite the defendant having alerted the court that an individual, presumably defense counsel, had told him that he "had to come in" to enter a plea instead of going to the hospital for his injury, the court made no inquiry whatsoever as to whether defense counsel told the defendant he "had to come in" even if he was injured. Rather, the court simply informed the defendant that "we're marking your paperwork medical attention for your finger" to ensure he could get "medical attention" "[w]hen you go into the jail."
Thus, the plea court not only failed to conduct any inquiry as to whether defense counsel pressured the defendant to come to court to enter a plea instead of going to the hospital for his injury, but also compounded that error by suggesting to the defendant that he would not be afforded medical attention for his injury until after he entered a plea and was incarcerated. The court never indicated that it was willing to entertain an adjournment of the plea proceeding for the defendant to obtain medical attention, nor did the court even ask the defendant if he wished to obtain medical attention before entering a plea. Rather, the court simply posed a conclusory question as to whether the injury was "getting in the way of [the defendant] understanding what's going on," and when the court repeated that inquiry, the defendant gave an equivocal answer, "[n]ot really." The plea court correctly acknowledged that "[n]ot really is a problem," and followed up with a question "[h]ave you understood everything I've said so far?", to which the defendant answered, "[s]omewhat, yes" (emphasis added)
After the plea court held an off-the-record bench conference, the defendant gave a one-word answer confirming that his injury was not preventing him from understanding what the court was saying. However, immediately thereafter, in response to the court's query as to whether the injury was preventing the defendant from "being able to concentrate and knowingly and willingly and voluntarily enter[ ] this plea of guilty today," the defendant answered "[y]es." The defendant then appeared to withdraw that answer, and acknowledged that he was "confused." Finally, in response to the court again questioning the defendant, he gave one-word answers confirming that his pain was not preventing him from understanding what the court was saying and that he "understood everything that has happened here so far." Even disregarding that the significance of those confirmatory answers was undermined by the defendant's immediately preceding statement that he was "confused," the court merely obtained confirmation that the defendant's pain was not preventing him from understanding the proceedings. However, the court never inquired, let alone obtained confirmation, as to whether defense counsel had pressured the defendant to come to court to enter a plea instead of going to the hospital for his injury, or whether the defendant felt pressured
to promptly enter the plea so as to obtain the promised medical treatment in prison. Consequently, it cannot be said that the court conducted an adequate inquiry to ensure the defendant's plea was voluntary.
While the defendant's contentions with respect to his injury are unpreserved for appellate review, since he did not specifically address the injury on his motion to withdraw the plea (see CPL 470.05[2]; People v Johnson, 170 AD3d 1195, 1196), this Court has the authority to review those contentions in the exercise of our interest of justice jurisdiction (see CPL 470.15[6][a]; [*9]People v Santiago, 71 AD3d 703, 704). Under the circumstances of this case, in which the plea court's errors are apparent on the face of the record, including the plea court's failure to make any inquiry regarding the defendant's statement that he had told defense counsel he needed to go to the hospital, but "[h]e said that you wouldn't accept that, so I had to come in," there is no compelling reason to decline to exercise our interest of justice jurisdiction to address the matter.
In any event, even without considering the defendant's contentions pertaining to his injury, the record reflects that the plea court failed to meaningfully inquire into whether the defendant was afforded an opportunity to thoroughly discuss the facts of his case and any potential defenses with his attorney prior to entering the plea, as discussed previously. Moreover, the court failed to meaningfully address the assertions raised by the defendant on his motion to withdraw the plea and at the outset of the sentencing proceeding, including that defense counsel coerced him to take the plea and erroneously advised him that he "could take it back any time." Where, as here, "initial inquiry exposes difficulties or subsequent interpositions by defendant on sentencing raise questions, the court should be quick to offer the defendant an opportunity to withdraw his plea and at the very least conduct a hearing" (People v Nixon, 21 NY2d at 355). Yet, despite the defendant's repeated equivocal statements during the plea proceeding regarding the adequacy of his discussions with defense counsel, as well as the defendant's specific assertions regarding the conduct of his attorney, the court denied the defendant's motion to withdraw the plea based solely on the transcript of the plea proceeding, without "citing to evidence showing that the defendant's constitutional right to counsel had been adequately safeguarded" (People v Hollmond, 191 AD3d at 141). Moreover, the People "failed to allege, let alone demonstrate, any prejudice" that would result from the court permitting the defendant to withdraw his plea prior to sentencing (id. at 143).
Accordingly, I find that the Supreme Court's decision to rely on one-word statements offered by the defendant in response to repeated questioning, taken out of context and without any explanation obtained for the defendant's equivocal and contradictory statements, was improper, and that the defendant's motion to withdraw his plea of guilty must be granted.
In any event, even assuming, arguendo, that the transcript of the plea proceeding and the defendant's assertions regarding the conduct of defense counsel were not sufficient to warrant vacating the plea, the defendant's specific assertions were, at the very least, sufficient to warrant a hearing. Where a "careful scrutiny" (People v Brown, 14 NY3d at 118) of a motion to withdraw the plea "reveals that defendant's allegations fail to raise a legitimate question as to the voluntariness of the plea, the court may deny the motion without a hearing" (id.). "Where, however, the record raises a legitimate question as to the voluntariness of the plea, an evidentiary hearing is required" (id. at 116).
Here, it cannot be said that the Supreme Court engaged in a "careful scrutiny" of the defendant's specific assertions raised on his motion to withdraw the plea, insofar as the order denying that motion failed to meaningfully address those assertions, relying solely on the record of the plea proceeding (id. at 118). On the defendant's motion, he raised legitimate issues of fact hinging on credibility regarding the conduct of defense counsel, which could not be rejected without a hearing (see People v Flinn, 188 AD3d 1093, 1094-1095; People v Hollmond, 170 AD3d 1193, 1195). For instance, the defendant attested in his affidavit that defense counsel failed to discuss potential defenses available to him prior to the plea proceeding, which was wholly consistent with the defendant's statements made during the plea proceeding that he had not discussed the facts of the case with defense counsel prior to the plea proceeding and had only discussed "some" of the facts with his attorney during the brief in-court conference. While defense counsel submitted an affidavit contesting that assertion, there is no basis on this record to credit defense counsel's conclusory statement that "I discussed all possible defenses with [the defendant]" over the defendant's assertion, without conducting a hearing to evaluate credibility (see People v Fitzgerald, 56 AD3d 811, 813).
Further, with regard to the defendant's assertion that an unidentified individual had "acknowledge[d] her guilt" of one of the charges against him and "asserted [the defendant's] innocence," it is notable that defense counsel did not even deny that assertion. Rather, the attorney conceded that this "admission" was initially "made," and asserted that it was subsequently "changed by the party . . . on several occasions after the original statement," without offering any further [*10]information. Since defense counsel failed to deny that an unidentified individual had, in fact, informed him that the defendant was innocent of one of the charges to which he entered a plea of guilty, a hearing was clearly warranted to address the circumstances of defense counsel's discussion with the unidentified individual, including but not limited to whether that individual was also a client of defense counsel (see People v Wentland, 191 AD3d at 707 ["vacatur of a plea is warranted where the defendant demonstrates a significant possibility of a conflict of interest . . . bearing a substantial relationship to the conduct of the defense arising from joint representation of the defendant and another individual" (internal quotation marks omitted)]).
Moreover, even assuming, arguendo, the unidentified individual who indicated that the defendant was innocent of one of the charges was not also a client of defense counsel, the defendant's assertions regarding the unidentified individual still warranted a hearing. At the outset of the sentencing proceeding, and prior to the imposition of the sentence, the defendant alerted the court that defense counsel "withheld a witness statement from me," and "I didn't find this out until after that plea about the witness statement who was asserting my innocence in that drug sale saying that she lied to get me to plea to get herself out of trouble" (emphasis added). Since the court failed to even address the defendant's uncontroverted allegation that he learned after the plea proceeding that defense counsel had "withheld" the exculpatory witness statement from him, it cannot be said that the court gave due consideration to the defendant's specific assertions. Moreover, the defendant made no statements during the plea proceeding which refuted his assertions regarding the witness statement, and, in fact, the defendant could not possibly have registered a protest regarding that statement during the plea proceeding given his lack of knowledge thereof at that time.
Accordingly, I find that the transcript of the plea proceeding, standing alone, is sufficient to warrant the granting of the defendant's motion to withdraw his plea of guilty, but that, in any event, a hearing was warranted, at the very least, to address the defendant's assertions raised in his affidavit and at the outset of the sentencing proceeding regarding the conduct of defense counsel. Consequently, I vote to reverse the judgment, on the law and as a matter of discretion in the interest of justice, grant the defendant's motion to withdraw his plea of guilty, and remit the matter to the Supreme Court, Nassau County, for further proceedings on the superior court information.
ENTER:
Aprilanne Agostino
Clerk of the Court